Keith CARPENTER, Plaintiff,

v.

Cecil D. ANDRUS, Secretary of the United States Department of Interior; The Director, United States Fish and Wildlife Service; and The United States of America, Defendants,

v.

ONE LEOPARD SKIN AND SKULL (Panthera Pardus) seized at John F. Kennedy International Airport, Queens County, New York, from Lufthansa–German Airlines on September 26, 1977, Third–Party Defendant.

Civ. A. No. 79–126.

United States District Court,
D. Delaware.

Sept. 30, 1980.

William H. Uffelman, Jr., Biggs & Battaglia, Wilmington, Del., for plaintiff.

James W. Garvin, Jr., U. S. Atty., Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., for defendants.

OPINION

MURRAY M. SCHWARTZ, District Judge.

In this motion for costs and attorney's fees, plaintiff, having prevailed in his effort to prevent forfeiture of property under the Endangered Species Act of 1973, 16 U.S.C. §§ 1531–43 ("the Act"), seeks to invoke the Act's provision for discretionary cost awards in private enforcement actions. Although this motion might well raise difficult questions of statutory interpretation these issues are not reached today for the Court finds that the motion ought to be denied on discretionary grounds.

The facts are detailed in an opinion which issued on January 29, 1980,[1] and are therefore only briefly recounted. On September 26, 1977, the defendant, United States Fish & Wildlife Service ("the Service"), seized plaintiff's leopard skin and skull ("skin") at Kennedy International Airport in New York. Because the leopard was of a species listed as endangered under the Act's regulations (50 C.F.R. § 17.11), the Service detained the skin and commenced investigation for a civil penalty proceeding.[2] Plaintiff was notified of the detention on or about February 3, 1978 and of the penalty on July 25, 1978. He submitted evidence showing that the shipment of the skin to the United States occurred through a shipping agent's error and in violation of his express directive. Consequently, the Service found that plaintiff had not violated the Act and terminated the proceeding on January 11, 1979, with the announced intentions of seeking forfeiture of the skin in federal district court. On March 8, 1979, plaintiff filed the present action asking restitution of his leopard skin and skull; the government's forfeiture action was filed as a counterclaim. This Court ruled that, because plaintiff had not violated the Act, his property could not be forfeited.

1. *Carpenter v. Andrus*, 485 F.Supp. 320, 321 (D.Del.1980).

2. Importation of specimens of an endangered species violates Section 9(a)(1)(A) of the Act,

16 U.S.C. § 1538(a)(1)(A). Under Section 11(a)(1), 16 U.S.C. § 1540(a)(1), *knowing* violation subjects the actor to an administratively assessed monetary penalty.

In this motion for costs, plaintiff focuses on the lengthy—allegedly too lengthy—administrative proceedings asserting that they constitute a violation of the Act that triggers the cost provision. Subsection (g) of Section 1540 of the Endangered Species Act provides, in pertinent part:

> (1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf—
>
> > (A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . ., who is *alleged to be in violation of any provision of this chapter* or regulation issued under the authority thereof;
> >
> > . . .
>
>     \*    \*    \*    \*    \*    \*
>
> (4) The court, in issuing any final order in *any suit brought pursuant to paragraph (1)* of this subsection, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such an award is appropriate.

16 U.S.C. § 1540(g) [emphasis supplied].

■ In order to mount a successful claim under this subsection, plaintiff would have to show that the continued detention and delays in the Service's proceedings did in fact constitute a violation of the Act,[3] and that his action to recover property detained under color of the Act is a suit to enjoin violation within the meaning of Section 1540(g)(1). Plaintiff would also have to demonstrate the inapplicability of 28 U.S.C. § 2465 which appears to limit recovery of costs in forfeiture actions to instances of seizure without reasonable cause.[4] The Court intimates no opinion on the merits of these questions.[5] Assuming *arguendo* that plaintiff may properly seek costs and attorney's fees under section 1540(g)(4), the motion is, nevertheless, denied on the ground that this case is not an "appropriate" one for such an award.

Neither legislative history nor case law offers interpretations of the statutory requirement that costs be granted only "in an appropriate case." Some illumination may

---

3. Plaintiff points to Section 1540(e)(5) of the Act which reads, in pertinent part,

> All provisions of law relating to the seizure, forfeiture, and condemnation of a vessel for violation of the customs laws, the disposition of such vessel or the proceeds from the sale thereof, and the remission or mitigation of such forfeiture, shall apply to the seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, insofar as such provisions of law are applicable and not inconsistent with the provisions of this chapter;

16 U.S.C. § 1540(e)(5).

Plaintiff argues that this provision incorporates 19 U.S.C. § 1602 04, customs laws which require, *inter alia*, that government officials "immediately" report and pursue penalty proceedings (19 U.S.C. § 1604). Plaintiff's theory is that, by virtue of the Act's incorporation of this customs law requirement, the Service's alleged failure to act promptly becomes a violation of the Endangered Species Act within the meaning of section 1540(g)(1). As with the other questions of statutory interpretation, the Court does not today reach the incorporation problems presented by this argument.

4. Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but *if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs,* nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution. 28 U.S.C. § 2465. [emphasis supplied].

5. The Court also notes defendants' belief that "sovereign immunity" bars assessment of costs against the government under 16 U.S.C. § 1540(g)(4). The Court finds that subsection (g)(4)'s reference to subsection (g)(1) which expressly permits suits against the United States and its agencies is sufficiently explicit to constitute a waiver of governmental immunity under *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

be had by comparison with another statute containing a similar provision for citizens' suits. In *Delaware Citizens for Clean Air, Inc. v. Stauffer Chemical Co.*, 62 F.R.D. 353 (D.Del.1974), aff'd, 510 F.2d 969 (3d Cir. 1975), Judge Stapleton considered the appropriateness of awarding costs under a provision of the Clean Air Act virtually identical to the costs provision at issue here.[6] He found the grant of discretion to the trial court sufficiently broad to permit weighing of equitable considerations in the decision. Similarly, the First Circuit Court of Appeals found itself at liberty to inquire whether or not the statutory purposes were served by plaintiff's action in determining the "appropriateness" of a request for costs under the Clean Air Act. *Natural Resources Defense Council, Inc. v. EPA*, 484 F.2d 1331, 1338 (1st Cir. 1973). Although these courts were concerned with the propriety of awarding costs to plaintiff–public interest groups that had *lost* the main action, this Court finds their reasoning apt and supportive of the decision to deny costs to a winning plaintiff in this case.

■ By leaving to the Court the determination of appropriateness, Congress permitted consideration of those factors traditionally weighed in awarding costs. One of the major factors has always been the public benefit conferred by plaintiffs who undertake actions that serve to advance important public policies–the so–called "private attorney general" theory. *See, e. g., Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263

(1968). It seems clear that the citizens' suit provision of the Endangered Species Act embodies this theory. The statutory subject matter, mechanics, and pertinent language are exceedingly similar to the Clean Air Act provisions which both courts and congressmen have regarded as intended "to allocate the costs of litigation equitably, to encourage the achievement of statutory goals."[7] For a costs and attorney's fees award to be appropriate under the citizens suit provision, plaintiff would have to have undertaken the suit in order to achieve a result consonant with the essential goals of the Act.

■ The purpose of the Endangered Species Act is "to provide for conservation, protection and propagation of endangered species of fish and wildlife." S.Rep.No.307, 93d Cong., 1st Sess. *reprinted at* [1973] U.S. Code Cong. & Admin.News, pp. 2989, 2989–90. *See also Tennessee Valley Authority v. Hill*, 437 U.S. 153, 174–76, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978). One of the means of pursuing this goal was the ban on importation with its aim of deterring traffic in endangered species. *See United States v. A Fully Mounted Leopard (Panthera Pardus)*, 404 F.Supp. 1298, 1299 (E.D.N. Y.1975). To grant costs and attorney's fees in this case would twist the spirit of the private attorney general action, for plaintiff's suit does not advance the statutory purpose either in intent or in result. While we have held that plaintiff may legitimately claim possession of the leopard skin and skull, his claim in no way promotes the

---

6. The Court had before it 42 U.S.C. § 1857h 2 which provided:

> (d) The court, in issuing any final order may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

The Act has since been recodified with amendments not pertinent to this Section. *See* 42 U.S.C. § 7604.

7. *Natural Resources Defense Council, supra*, 484 F.2d at 1338.

In considering the 1977 Amendments to the Clean Air Act, the House of Representatives Interstate and Foreign Commerce Committee's Report cited the First Circuit's opinion as a good explanation of the philosophy of cost and attorneys fees awards in citizens' suits. H.R. Rep.No.294, 95th Cong., 1st Sess. 337, *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 1077, 1416.

public goal of conservation. The Court recognizes an argument can be made that awarding costs against the government might promote a significant public interest in expediting administrative action. Such an interest is embodied in the provisions of the customs laws, 19 U.S.C. § 1602–04, which plaintiff argues are incorporated by the Endangered Species Act, 16 U.S.C. § 1549(e)(5).[8] Even assuming that the customs laws are applicable and were violated, their policy alone cannot support an award of costs where, as here, the award that supports the customs laws' policy would operate to the detriment of the Endangered Species Act's primary goal of conservation. The purposes of a statute whose procedures are partially adopted by a second statute cannot predominate when that result would disserve the major legislative goal of the second. Consequently the Court finds that an award under 16 U.S.C. § 1540(g)(4) is not appropriate.

An order will be entered denying plaintiff's motion for costs and attorney's fees.