711 F.2d 431
 19 ERC 1340
 ROOSEVELT CAMPOBELLO INTERNATIONAL PARK COMMISSION, Petitioner,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.
The Pittston Company, et al., Intervenors.
ROOSEVELT CAMPOBELLO INTERNATIONAL PARK COMMISSION, Petitioner,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.
The Pittston Company, Intervenor.
CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., Natural
Wildlife Federation and Natural Resources Council
of Maine, Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.
The Pittston Company, et al., Intervenors.
CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., et al., Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.
The Pittston Company, et al., Intervenors.
 Nos. 81-1548, 81-1549, 81-1560 and 81-1773.
 United States Court of Appeals,
First Circuit.
 Argued April 6, 1982.
Decided June 23, 1983.
 
 Alan Wilson, David F. Cavers, Jr., Kathleen C. Farrell, Palmer & Dodge, Steven D. Stark, and Douglas I. Foy, Boston, Mass., on brief, for petitioner Conservation Law Foundation of New England, Inc.
 Rosanne Mayer, Atty., U.S. Dept. of Justice, Washington, D.C., on brief, for respondent.
 Before COFFIN, BOWNES and BREYER, Circuit Judges.
 COFFIN, Circuit Judge.
 
 
 1
 This case is before us today on petition of the Conservation Law Foundation (CLF) for an award of attorneys' fees against the U.S. Environmental Protection Agency (EPA) in connection with our decision in Roosevelt Campobello International Park Commission v. U.S. Environmental Protection Agency, 684 F.2d 1041 (1st Cir.1982). CLF claims entitlement under three statutes: the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(d); the citizen suit provision of the Endangered Species Act, 16 U.S.C. § 1540(g)(4); and Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). Defendant contests CLF's entitlement under all of these statutes. Both parties have briefed this issue, the resolution of which we now address.
 
 I. Background
 
 2
 In our opinion on the merits, we reviewed EPA's decision to grant a National Pollutant Discharge Elimination System (NPDES) permit to the Pittston Company to construct and operate an oil refinery and marine terminal at Eastport, Maine. CLF challenged that decision on five grounds under the Clean Water and Endangered Species Acts, claiming, inter alia, that EPA had violated its duty under the Endangered Species Act to use the best scientific data available in making endangered species jeopardy determinations, 16 U.S.C. § 1536(a)(2),[1] and its duty under the Clean Water Act to include state-certified conditions in the federal NPDES permit, 33 U.S.C. § 1341(d).
 
 
 3
 CLF also argued that EPA violated the Endangered Species Act by redefining the bald eagle population which the U.S. Fish and Wildlife Service had determined was likely to be jeopardized by the Pittston refinery; by failing to give required weight to the biological opinions of the Fish and Wildlife Service and the National Marine Fisheries Service on jeopardy to the bald eagle and the right and humpback whales; and by failing to include in the NPDES permit a condition limiting the content of mercury in the refinery's crude oil supply.
 
 
 4
 Agreeing outright with CLF's first two points, and indicating sympathy with its third,[2] we vacated EPA's permit decision and remanded for further proceedings.[3] This petition followed.
 
 
 5
 II. Attorneys' Fees Under the Clean Water Act
 
 
 6
 A. The issue.
 
 
 7
 The Clean Water Act provides for two types of citizen-initiated judicial review: "citizen suits" in district court under section 1365, and petitions for review in the courts of appeals under section 1369. Under section 1365(d), a court "may", when "appropriate", award "reasonable" attorneys' fees to "any party" in "any action brought pursuant to" section 1365(a). The question here is whether section 1365(d) authorizes an award of fees in this case--whether, that is, CLF's petition for review may be deemed a "citizen suit" "brought pursuant to" section 1365 for purposes of attorneys' fees, even though, procedurally, it was maintained under section 1369.
 
 
 8
 EPA urges that section 1365(d) applies on its face only to suits instituted in district court under section 1365(a), and is therefore inapplicable to CLF's petition for review of EPA's permit decision under section 1369, because section 1369, unlike section 1365, makes no mention--at least no separate mention--of attorneys' fees. As EPA argues, sections 1365 and 1369 not only specify different fora, but also define different classes of suits: section 1365, for example, addresses nondiscretionary duties of the EPA Administrator, whereas section 1369 extends also to exercises of agency discretion.[4] The two sections also have different timing and notice provisions: section 1369 petitions may be instituted without prior notice to EPA and must be commenced within 90 days of the agency action in question, whereas section 1365 suits may only be instituted on 60 days' notice to EPA and need not be commenced with 90 days.
 
 
 9
 EPA's reasoning is obviously not without force. Indeed, were there nothing more to consider than the fact that the specific section of the Clean Water Act under which this action was brought does not provide for attorneys' fees, it would be overwhelming. But there is much more to consider: our own precedent in construing the Clean Air Act, a parallel statute; legislative intent as evidenced by considerations of general policy; subsequent decisions from other circuits; the central teaching of Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); the 1977 amendments to the Clean Air Act and their implications for this case. We consider each in turn.
 
 
 10
 B. Clean Air Act Precedent.
 
 
 11
 In Natural Resources Defense Council v. Environmental Protection Agency, 484 F.2d 1331 (1st Cir.1973) [NRDC I ], we dealt with the then almost identically worded parallel provisions of sections 304 and 307 of the Clean Air Act, Pub.L. No. 91-604, 84 Stat. 1676, §§ 304, 307, formerly codified at 42 U.S.C. §§ 1857h-2, 1857-5(b)(1), currently codified at 42 U.S.C. §§ 7604(d), 7607, on which the Clean Water Act sections in question here were modeled. Like the Clean Water Act, the Clean Air Act authorizes citizen suits in district court and petitions for review in the courts of appeals. As in the Clean Water Act, the citizen suit section of the Air Act authorizes attorney fee awards in suits "brought pursuant to" the citizen suit section. Notwithstanding this language, we held that, for attorneys' fee purposes, a petition for review could be deemed a suit "brought pursuant to" the citizen suit section.
 
 
 12
 We acknowledged the rigorous requirement of 28 U.S.C. § 2412(a) that there be a specific statutory sanction for counsel fees. Id. at 1335. That requirement was satisfied by section 304, we held, reasoning that the petition for review section (section 307) merely designated a circuit court as the forum for some of the suits authorized by the Clean Air Act. Id. at 1336. Two additional considerations buttressed our conclusion. First the "any citizen" standing provision of section 304(a), the citizen suit section, was not repeated for section 307, and thus was apparently intended to apply to both sections. Finally, Congressional policy to encourage citizens to take the initiative where administrative agencies failed would be "no less frustrated if the EPA approves an inadequate plan than if it fails to enforce an adequate plan." Id. at 1337.
 
 
 13
 C. Policy Considerations and Other Evidence of Congressional Intent.
 
 
 14
 Apart from the above-mentioned policy to encourage citizens where administrative agencies fail, other policy considerations may be noted. There is no indication that Congress intended the availability of fees under the Clean Water (or the Clean Air) Act to turn on the forum where suit is filed, for fees are routinely allowed under the two Acts' citizen suit provisions for work in the court of appeals when a citizen suit is appealed from district court. There is thus no reason to infer negative Congressional intent for suits instituted in the court of appeals in the first instance. The 90-day limitation period on petitions for review is likewise irrelevant to the issue of fees.
 
 
 15
 The citizen-suit notice requirement is more troubling, for notice might conceivably be thought relevant to the fairness of awarding fees,[5] but this factor is not dispositive, for the primary purpose of fee awards is not to punish the agency,[6] but to promote citizen enforcement, and fairness concerns seem adequately covered already by the statute's restriction of fee awards to "appropriate" cases. In any event, CLF's participation in permit proceedings at the agency level gave EPA adequate notice of CLF's objections long before commencement of its petition for review.[7] Finally, we note, as in NRDC I and the Clean Air Act, that the test of standing under both sections of the Clean Water Act is the same, despite superficial differences in language. See 33 U.S.C. § 1365(g); Montgomery Environmental Coalition v. Costle, 646 F.2d 568, 576-78 (D.C.Cir.1980) [Montgomery merits case]; Currie, Judicial Review Under Federal Pollution Laws, 62 Iowa L.Rev. 1221, 1273 (1977).
 
 
 16
 D. Subsequent decisions.
 
 
 17
 Our NRDC I decision was not persuasive to other circuit courts of appeals. In Natural Resources Defense Council v. Environmental Protection Agency, 512 F.2d 1351 (D.C.Cir.1975) [NRDC II ], the court felt from its reading of legislative history that the "petition for review" section, section 307, was wholly independent from section 304 and that the two sections contemplated "distinct groups of cases". Id. at 1354-55. Then, after Alyeska, see infra, the Fifth Circuit, though finding "[t]he logic of [our] policy argument [in NRDC I ] compelling", followed the D.C. court in relying upon legislative history to conclude that there was no relationship between sections 304 and 307. Natural Resources Defense Council v. Environmental Protection Agency, 539 F.2d 1068, 1071 (5th Cir.1976) [NRDC III ].
 
 
 18
 E. Alyeska.
 
 
 19
 In between these two circuit court cases came Alyeska Pipeline, supra. In that litigation, the court of appeals had held that attorney's fees could be awarded absent any statutory basis, on the broad policy bases that plaintiffs had vindicated the statutory rights of all citizens and had helped insure the proper functioning of government, and that the awarding of fees was necessary to avoid deterring suits against well financed defendants. 421 U.S. at 245-46, 95 S.Ct. at 1615-16. The Supreme Court, after rehearsing the history behind the "American Rule" generally proscribing an award of attorneys' fees to the prevailing party, reversed, reiterating its rationale several times: "[I]t would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in the manner ... urged", id. at 247, 95 S.Ct. at 1616; Congress has not "extended any roving authority to the Judiciary to allow counsel fees ... whenever the courts might deem them warranted", id. at 260, 95 S.Ct. at 1623; there is no grant of authority "to award attorneys' fees whenever the courts deem the public policy furthered", id. at 263, 95 S.Ct. at 1625; courts "are not free to fashion drastic new rules" on attorneys' fees or "to pick and choose" among plaintiffs and statutes "depending upon the court's assessment" of their importance, id. at 269, 95 S.Ct. at 1627; "[I]t is not for us to invade the legislature's province". Id. at 271, 95 S.Ct. at 1628.
 
 
 20
 Although our decision in NRDC I relied on what we deemed specific statutory authority, our reading of legislative intent may not, as the District of Columbia and Fifth Circuits concluded, have been convincing. Without more, our decision may not have withstood scrutiny under Alyeska.
 
 
 21
 F. The 1977 Amendments to the Clean Air Act.
 
 
 22
 Spurred by NRDC II and III, Congress amended the Clean Air Act to include separate authorization of attorneys' fees in the section on petitions for review. Clean Air Act Amendments of 1977, Pub.L. No. 95-95, § 305(f), 91 Stat. 685, 777 (1977), codified at 42 U.S.C. § 7607(f).[8]
 
 
 23
 The legislative history of this amendment is illuminating. The House committee report first reveals that the committee, in adding express authority to award fees in petitions for review, had rejected an amendment restricting awards to cases where the party seeking fees was the "prevailing party". It did so "largely on the grounds set forth in NRDC v. EPA, 484 F.2d 1331, 1338 [sic] (1st Cir.1973)." H.R.Rep. No. 95-294, 95th Cong., 1st Sess. 337 (1977), reprinted in 1977 U.S.Code Cong. & Ad.News 1077, 1416. In other words the committee accepted the reasoning set forth by us on the assumption that fees were awardable in petitions for review. We realize this is not very direct evidence of Congressional approval, but it is, we think, a slight indication that we had not misread Congressional intent. We acknowledge that the basic reason given by the House Interstate and Foreign Commerce Committee for the amendment--"to meet the requirement for specific authorization imposed by 28 U.S.C. sec. 2412 and by the Supreme Court's ruling in Alyeska "--gives no positive support to our reading.
 
 
 24
 The Senate committee report, however, could not be more clear:
 
 
 25
 "The purpose of the amendment to section 307 is to carry out the intent of the committee in 1970 that a court may, in its discretion, award costs of litigation to a party bringing a suit under section 307 of the Clean Air Act.
 
 
 26
 "The law has been interpreted otherwise. Section 304 of the Clean Air Act specifically authorizes courts to award costs; however section 307 did not contain a specific authorization. Courts have construed the absence of such authorization in section 307 to indicate congressional intent to prohibit a discretionary award of fees in section 307 suits." S.Rep. No. 95-127, 95th Cong., 1st Sess. 99 (1977).[9]
 
 
 27
 In short, the Senate Environment and Public Works Committee goes beyond the House committee, which merely said it was filling a gap suggested by the Supreme Court. It gives the underlying motivation, namely, to carry out the intent of the original legislation.
 
 
 28
 All this leaves us with a classically close question. Under 28 U.S.C. § 2412(a) and Alyeska we must not rove at will but must base any fee award on a specific statute. We have no statute that expressly covers our case. But we have a statutory combination identical to one in a parallel statute, which, ten years ago, we construed to embrace this kind of case. At that time we made our own independent and uncorroborated analysis of legislative intent. Our efforts were not deemed persuasive by other courts. Reacting to this skepticism, Congress has not only ratified our interpretation of the Clean Air Act by a conforming amendment, but one of the two legislative bodies has proclaimed that our interpretation coincided with the legislative intent ab initio. Although subsequent legislative history is less authoritative than contemporaneous explanation, subsequent Congressional declaration of an act's intent is entitled to great weight in statutory construction. See Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980) ("[W]hile the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, ... such views are entitled to significant weight, ... and particularly so when the precise intent of the enacting Congress is obscure ....") (citations omitted); cf. Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 380-81 & n. 8, 89 S.Ct. 1794, 1801-02 & n. 8, 23 L.Ed.2d 371 (1969). But cf. Consumer Product Safety Commission v. GTE Sylvania, 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980).
 
 
 29
 We see every policy objective of Alyeska served by interpreting the Clean Water Act in the same way. This is not, as in Alyeska itself, an instance of a court picking and choosing on the basis of its own view of policy. The legislature has spoken. Our only problem is that it has spoken on a statute having to do with a different element of nature, air, whereas the instant case involves a statute having to do with water. We concede it is something of a leap to say that Congress must have intended the same kind of fee incentive for petitions to review agency action in clean water matters as it has now unequivocally manifested in clean air matters. But it is not much of a leap.
 
 
 30
 In Northcross v. Memphis Board of Education, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973), the Supreme Court held that similarity of language was a "strong indication" that two attorneys' fee statutes "should be interpreted pari passu." Here, in addition to similar statutory language, the 1972 Senate report on the Clean Water Act explicitly states that the citizen suit provision of 33 U.S.C. § 1365 was "modeled on the provision enacted in the Clean Air Act." S.Rep. No. 92-414, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 3668, 3745. Given this legislative gloss, the common concern of both statutes with pollution, and the common purpose of each act's authorization of attorneys' fees to promote citizen enforcement, we are persuaded that Congress specifically intended the two provisions on attorneys' fees to have the same scope and to be interpreted in the same way. Cf. Natural Resources Defense Council v. Train, 510 F.2d 692, 699-702 (D.C.Cir.1975). Our conclusion, moreover, is reinforced by the assumption that Congress would not make a distinction with so little rational basis. For all of these reasons we therefore follow our own Clean Air precedent and apply it to the Clean Water Act.
 
 
 31
 This is not quite the end of the issue. The question remains whether the fees authorized in connection with petitions for review cover all issues or, as certain language in our NRDC I decision suggests, are confined to the same kinds of issues as could have been brought under the citizen suit section, 33 U.S.C. § 1365(a), i.e., issues involving "a failure by the Administrator to perform any act or duty under this chapter which is not discretionary."[10] 33 U.S.C. § 1365(a)(2).
 
 
 32
 In NRDC I, we noted that the "essence" of NRDC's petition for review was its claim that the Administrator had breached certain nondiscretionary duties. 484 F.2d at 1335. Nothing in our decision, however, actually limited NRDC's recovery to issues raisable in a citizen suit, and our earlier opinion on the merits indicates that, whatever its "essence", NRDC's petition also raised issues of "sound discretion" outside the scope of the citizen suit section. See NRDC v. EPA, 478 F.2d 875, 884 (1st Cir.1973) [NRDC I merits case].
 
 
 33
 We need not rely solely on NRDC I, however, for the Clean Air Act Amendments of 1977 suggest an answer. The amendments provide that "[i]n any judicial proceeding under this section [i.e., in any petition for review], the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such an award is appropriate." 42 U.S.C. § 7607(f). Nothing in this language limits attorneys' fees to issues raisable in a citizen suit, or for that matter to violations of the Clean Air Act, and the amendments elsewhere state (42 U.S.C. § 7607(d)(9)(A)) that agency action may be reversed when "arbitrary, capricious, an abuse of discretion", or, broadly, "otherwise not in accordance with law".
 
 
 34
 Inasmuch as the 1977 amendments reflect Congress' understanding of the Clean Air Act's original fees provision, we are compelled to give like scope to the parallel fee provision of the Clean Water Act. As a matter of policy, too, it would seem anomalous if a prevailing petitioner were denied fees merely because his challenge to a permit rested on objections from outside the Clean Water Act, when the Clean Water Act provides the mechanism by which those objections may be made. We therefore conclude that CLF is entitled to seek fees under the Clean Water Act for all issues properly raised in its petition, including endangered species issues.
 
 
 35
 G. Work at the Agency Level.
 
 
 36
 Anticipating the possibility of such a holding, EPA urges that even if CLF is entitled to some fees, it may only recover for work in judicial proceedings, and cannot recover for work in the agency hearing on Pittston's permit application. We agree.
 
 
 37
 In support of its request, CLF cites four cases awarding fees for administrative-level work under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(k).[11] New York Gaslight Club v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); Fischer v. Adams, 572 F.2d 406, 409 (1st Cir.1978); Parker v. Califano, 561 F.2d 320 (D.C.Cir.1977); Johnson v. United States, 554 F.2d 632 (4th Cir.1977). The language of Title VII, however, is crucially different from that of the Clean Water Act. Whereas the Clean Water Act only authorizes fee awards in "action[s]" brought pursuant to 33 U.S.C. § 1365(a), Title VII authorizes fees in "any action or proceeding ".[12] In addition, the Clean Water Act refers to attorneys' fees as part of the recoverable "costs of litigation "; Title VII makes no comparable reference.
 
 
 38
 Acknowledging the implications of this judicial language, CLF asserts that language is only one factor to consider in determining the availability of fees, and that other factors support an award of fees for agency-level work here: in particular, that CLF was for all practical purposes required to participate in administrative proceedings to preserve meaningful judicial review, and that agency-level proceedings are as important as lawsuits in promoting the policies of the Acts in question. Although we are sympathetic to these considerations, CLF has cited no legislative history in their support, and our review of the cases persuades us that purely policy concerns cannot supply the specific authorization required under 28 U.S.C. § 2412(a) and sovereign immunity principles as interpreted in Alyeska.[13]
 
 
 39
 Legislative history on the parallel provisions of the Clean Air Act supports our reading, for when Congress amended the Clean Air Act in 1977 to overrule NRDC II and III, it expressly limited fee awards in petitions for review to "judicial proceedings". See 42 U.S.C. § 7407(f) (emphasis added); Sierra Club v. Gorsuch, 672 F.2d 33, 42 (D.C.Cir.1982), cert. granted, --- U.S. ----, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982). We therefore hold that CLF may only recover fees for work in connection with its petition in this court, and not for work before the EPA.[14]
 
 
 40
 H. "Appropriateness" and "Reasonableness" of a Fee Award Here.
 
 
 41
 There remain two issues with respect to CLF's request for fees under the Clean Water Act: whether an award of fees is "appropriate" in this case, and the relevance of certain factors in fixing a "reasonable" amount.
 
 
 42
 Apart from questioning the applicability of the fees provision of the Clean Water Act, EPA does not dispute that an award of some fees is otherwise "appropriate" within the meaning of 33 U.S.C. § 1365(d). Our own review confirms the absence of any ground for objection on this score: CLF prevailed outright on two important issues, and we indicated contingent agreement on a third. Moreover, CLF secured the relief it sought--i.e., remand to EPA.[15]
 
 
 43
 Nonetheless, CLF's success was considerably less than complete, and EPA accordingly urges us to limit CLF's recovery to issues on which CLF prevailed, relying on decisions so construing the civil rights attorney fees act, 42 U.S.C. § 1988. We need not decide the relevance of those precedents at this time,[16] however, for even if CLF is otherwise eligible for fees under the Clean Water Act for work on unreached or nonprevailing issues, the Act leaves fee awards to the discretion of the court.
 
 
 44
 CLF asserts that "[o]n no ESA [Endangered Species Act] issue ... did the Court expressly reject CLF's position." Explicitly or implicitly, the result is the same. With respect to CLF's claim that EPA failed to give proper weight to the biological opinions of the Fish and Wildlife Service and the National Marine Fisheries Service, we note that our opinion on the merits observes pointedly that "[a]n agency's duty to consult with the Secretary of Commerce or Interior ... does not divest it of discretion to make a final decision that 'it has taken all necessary action to insure that its action will not jeopardize the continued existence of an endangered species'." 684 F.2d at 1049. See also id. at 1050 ("[w]e cannot say that [the ALJ's] findings were not adequately supported, that the relevant factors were not considered, or that the ALJ made a clear error of judgment" in rejecting the Fish and Wildlife Service's conclusion that Pittston's refinery would jeopardize the bald eagle) (emphasis added). Our only objection to the ALJ's findings was that he failed to use the best available scientific data in making his jeopardy determinations--a wholly distinct issue from the biological opinions issue.
 
 
 45
 As for CLF's claim that EPA erred in failing to limit the future mercury content of Pittston's crude oil supply, suffice to say that, for the present, our opinion on the merits upholds the ALJ's "worst case" findings on mercury emissions. See id. at 1049-50. Although our opinion does not expressly reject CLF's argument, our silence on the issue does not signal agreement, as CLF implies, but rather indicates our conclusion that a mercury content limitation is not now required in any NPDES permit issued to Pittston. This is not a case where an issue was left unreached because it was unnecessary to decide in light of some decided issue; rather, it is an independent issue. If CLF believed that a more express ruling was required on the issue, it was up to it to seek rehearing or clarification.
 
 
 46
 Apart from the foregoing assertions, CLF has offered no special circumstances in support of an award on its nonprevailing issues, and our review of the merits suggests that those nonprevailing claims were basically insubstantial. In addition, those nonprevailing claims are analytically distinct from CLF's prevailing issues, even if they are not wholly "unrelated" in the sense of the ultimate relief sought (i.e., remand). We are therefore persuaded that an award of fees to CLF for work on these nonprevailing issues is, in our judgment and discretion, unwarranted.[17]
 
 
 47
 III. Attorneys' Fees Under the Endangered Species Act and the Equal Access to Justice Act
 
 
 48
 CLF's claim to fees under the Endangered Species Act is less promising. Although the citizen suit provision of that act is virtually identical to the citizen suit provision of the Clean Water Act, CLF cites--and our independent efforts have found--no legislative history indicating that Congress intended the fees provision of the Endangered Species Act to apply to proceedings other than citizen suits under that Act. In view of our conclusion that CLF is entitled to recover fees under the Clean Water Act, however, we need not actually resolve this question now.
 
 
 49
 Our Clean Water Act holding also disposes of CLF's claim under the Equal Access to Justice Act (EAJA), since the EAJA applies only in cases where fees are not "otherwise specifically provided by statute". 28 U.S.C. § 2412(d)(1)(A). Although we are persuaded that the EAJA provides an alternative basis for fees on CLF's Clean Water Act claim, the EAJA presents a great many difficult questions which have already divided the courts.[18] Since resolution of those questions is not necessary at this time, we leave them to another day.
 
 IV. Summary
 
 50
 To recapitulate, we hold that CLF is entitled to "reasonable" attorneys' fees for work on prevailing issues in this court, including this petition for attorneys' fees. It is not entitled to fees for work at the agency level, and we decline to award fees for work on nonprevailing issues. As for prevailing claims, we observe only that fees should be proportioned to reflect the extent of CLF's contribution to the development of the issues; i.e., where CLF contributed little to our result, any fee recovery attributable to such issue or issues should be similarly moderate. Since, however, we have left the fixing of a precise amount to the negotiation of the parties, we express no further views on this matter. The parties shall report to this court on the progress of their negotiations within a reasonable time, and in no event later than 90 days from the date of this opinion. Should the parties be unable to reach agreement, briefs on the issue of amount shall be submitted with the parties' report.
 
 
 51
 So ordered. No costs at the present time.
 
 
 
 [1]
 More precisely, CLF claimed that EPA had abused its discretion in refusing to reopen the record to include evidence that CLF believed was required by the best-available-data standard
 
 
 [2]
 Since the EPA administrative law judge rested his jeopardy determination on other grounds, his disregard of the Interior Secretary's definition of the bald eagle's endangered range was not strictly necessary to our decision. 684 F.2d at 1050 n. 5
 
 
 [3]
 Our decision was based also on the need for a supplemental environmental impact statement relating to the conditions of navigation necessary to minimize the risk of oil spills. CLF, however, did not argue this point independently and does not claim fees in connection with this or any other issue arising out of the environmental impact statement and the National Environment Policy Act (NEPA), 42 U.S.C. § 4321 et seq
 
 
 [4]
 Section 1365 permits suits
 "(1) Against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
 "(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a).
 Section 1369, by contrast, authorizes
 "[r]eview of the Administrator's action (A) in promulgating any standard of performance under section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C) of the title, (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title, (D) in making any determination as to a State permit program submitted under section 1342(b) of this title, (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, or 1316 of this title, and (F) in issuing or denying any permit under section 1342 of this title." 33 U.S.C. § 1369(b)(1).
 The standard of review under section 1369 is that set forth in the Administrative Procedure Act, 5 U.S.C. § 706--i.e., agency action must be upheld unless it is arbitrary, capricious, or otherwise not in accordance with law.
 
 
 [5]
 That is, it might be thought that an agency should not be "penalized" by an award of attorneys' fees when it might have taken corrective action on its own if given prior notice
 
 
 [6]
 See Natural Resources Defense Council v. Environmental Protection Agency, 484 F.2d 1331, 1338 (1st Cir.1973) (purpose of fee and cost awards "is not mainly punitive")
 
 
 [7]
 Without deciding the extent to which notice must be given for jurisdictional purposes as a prerequisite to the maintenance of a citizen suit under section 1365, we note that courts have taken a generally functional approach to notice, holding the requirement satisfied despite technical deficiencies where the agency had time to investigate and act on the matter in issue, free of judicial compulsion. See, e.g., Pymatuning Water Shed Citizens for a Hygienic Environment v. Eaton, 644 F.2d 995 (3d Cir.1981); Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 243 (3d Cir.1980) (two days' notice); Friends of the Earth v. Carey, 535 F.2d 165, 175 (2d Cir.1976) (functional approach to required recipients of notice under Clean Air Act's parallel provision); Natural Resources Defense Council v. Callaway, 524 F.2d 79, 83-84 & n. 4 (2d Cir.1975), cited with approval in Massachusetts v. U.S. Veterans Administration, 541 F.2d 119, 121 (1st Cir.1976); South Carolina Wildlife Federation v. Alexander, 457 F.Supp. 118 (D.S.C.1978)
 
 
 [8]
 42 U.S.C. § 7604(d), the "citizen suit" section, continues to provide that "[t]he court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."
 42 U.S.C. § 7607(f), the "petition for review" section, was added in 1977 and reads:
 "In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such an award is appropriate."
 
 
 [9]
 In Montgomery Environmental Coalition v. Costle, 646 F.2d 595, 597 (D.C.Cir.1981) [Montgomery fees case], followed without comment in Natural Resources Defense Council v. Environmental Protection Agency, 703 F.2d 700 at 705 n. 10 (3d Cir.1983), the D.C. Circuit held that fees were unavailable under the Clean Water Act in petitions for review brought under 33 U.S.C. § 1369. The court simply noted the Clean Air attorneys' fee amendment and observed that "[n]o comparable change" had been made in the Clean Water Act. While this position is a reasonable one, our reading of the detailed legislative history convinces us that that was not what Congress intended. Congress amended the Clean Air Act specifically to overrule the D.C. and Fifth Circuit decisions in NRDC II and III. Since the parallel provisions of the Clean Water Act had not yet been construed, there was no need to amend them, and no fair inference can be drawn that Congress intended by its inaction on the Water Act to preclude fees in petitions for review brought under 33 U.S.C. § 1369. If anything, Congress might well have assumed that, in light of its disapproval of NRDC II and III, the reasoning of those cases would not be extended to the Clean Water Act. In addition, it seems unreasonable to us to expect that every time Congress clarifies its intent on one act, it will search the statute books for every parallel enactment and amend those acts as well. Like judicial resources, Congressional resources are scarce and may understandably be conserved for situations in which action is strictly necessary
 
 
 [10]
 CLF's Clean Water Act claim is of this latter sort, for the Act unequivocally provides that state-certified conditions "shall" become a part of any federal NPDES permit issued by the Administrator. 33 U.S.C. § 1341(d). CLF's other claims, however, while properly raised in a petition for review, 33 U.S.C. § 1369, are outside the ambit of issues raisable by citizen suit under 33 U.S.C. § 1365(a), for they alleged either abuse of discretion, or involve duties arising under the Endangered Species Act and not "under this chapter"--i.e., under the Clean Water Act
 
 
 [11]
 Strictly speaking, CLF bases its request for fees for agency-level work on the Endangered Species Act. Our conclusions, however, apply equally to both acts, for the relevant language in both the Clean Water and Endangered Species Act is identical, and EPA has briefed the issue in both contexts. In view of our holding that court-level work on endangered species issues is compensable under the Clean Water Act, we are persuaded that the issue of agency-level work is better treated here
 
 
 [12]
 See, e.g., Johnson v. United States, Civ. No. H-74-1343 (D.Md.1976), aff'd, 554 F.2d 632 (4th Cir.1977) ("proceeding" is broader than "action" and includes administrative as well as judicial proceedings). The judicial nature of section 1365(d)'s reference to "any action" is underscored by section 1365(a)'s related reference to "civil suit[s] "
 
 
 [13]
 In both Parker and Gaslight, the decisive consideration was the language of section 2000e-5(k); policy was adduced only as an aid to construction. The policy question here, moreover, is not clear-cut. Although the denial of fees for agency-level work may seem anomalous in view of the value of agency proceedings in implementing the protections of the Clean Water and Endangered Species Acts, the denial makes some sense as a device to encourage the agency to be responsive to citizen objections and vigorous in its enforcement efforts, so as to avoid exposure to fee awards in judicial proceedings. Such a device also works to conserve judicial resources. Particularly where competing policy concerns are so easily identified, the balance is for Congress and not the courts to strike, and we are not at liberty to alter the balance it has struck
 
 
 [14]
 Although we have referred here to the Clean Water Act, our conclusion is equally applicable to the almost identically worded attorneys' fee provision of the Endangered Species Act, 16 U.S.C. § 1540(g)(4)
 
 
 [15]
 Success is, of course, not the only criterion, and even prevailing parties have been denied fees where the suit "does not advance the statutory purpose either in intent or in result". Carpenter v. Andrus, 499 F.Supp. 976, 979 (D.Del.1980). Such, however, is not the case here
 
 
 [16]
 See, e.g., Hensley v. Eckerhart, --- U.S. ----, ----, 103 S.Ct. 1933, 1941-1943, 76 L.Ed.2d 40 (1983); Nadeau v. Helgemoe, 581 F.2d 275, 279 (1st Cir.1978). Although both the Clean Water Act and the civil rights fees act refer to "reasonable" attorneys' fees, reasonableness may mean different things under each statute, for the two acts otherwise employ different criteria of entitlement. Under section 1988, fees may only be awarded to "the prevailing party", whereas fees may be awarded under the Clean Water Act to "any" party so long as an award is "appropriate". Similar "appropriateness" language in other acts has been interpreted to permit fee awards to nonprevailing parties, and to prevailing parties for work on nonprevailing claims. See, e.g., Sierra Club v. Gorsuch, 672 F.2d 33 (D.C.Cir.1982), cert. granted, --- U.S. ----, 103 S.Ct. 254, 74 L.Ed.2d 198; Environmental Defense Fund v. EPA, 672 F.2d 42 (D.C.Cir.1982); H.R.Rep. No. 95-294, 95th Cong., 1st Sess. 337, reprinted in 1977 U.S.Code Cong. & Ad.News 1077, 1416. See also NRDC I, supra, 484 F.2d at 1338
 
 
 [17]
 Petitioners also failed to prevail on a number of issues in connection with the environmental impact statement, e.g., the adequacy of EPA's consideration of alternative sites. CLF, however, did not brief these issues independently and does not seek fees for them. See note 3 supra
 
 
 [18]
 EPA raises five objections to a fee award under the EAJA, claiming (1) that the EAJA does not cover petitions for review under acts, such as the Clean Water Act, containing fee provisions of their own, whether or not those provisions apply to the case in question; (2) that CLF is not entitled to fees for issues on which it did not prevail; (3) that no fees can be awarded because the government's litigation position was substantially justified within the meaning of the EAJA; (4) that fees for agency-level work are barred because the EAJA does not apply to licensing proceedings; and (5) that fees for agency-level work are barred because CLF's administrative work was all performed before the effective date of the EAJA
 EPA's first objection seems meritless. See NRDC v. EPA, 703 F.2d 700 at 704-706 (3d Cir.1983). Without passing on the merits, we note, however, that the other issues have no obvious resolution. On the question of nonprevailing issues, see, e.g., Hensley v. Eckerhart, --- U.S. ----, ---- & n. 12, 103 S.Ct. 1933, 1940-41 & n. 12, 76 L.Ed.2d 40 (1983) (no fees for work on nonprevailing claims unrelated to prevailing issues; recognizing, however, that "there is no certain method of determining when claims are 'related' or 'unrelated' "). On the question of substantial justification and the definition of "position of the United States", compare NRDC v. EPA, supra, at 706-712 (Gibson, J.) and at 714-717 (Thompson, J.) and authorities cited thereat (position of the United States means not only government litigation arguments, but also agency action which led to litigation) with id. at 717-720 (Hunter, J., dissenting) and authorities cited thereat (only litigation positions need be substantially justified). With respect to antecedent work in cases pending on the effective date of the EAJA, see, e.g., S & H Riggers & Erectors v. OSHRC, 672 F.2d 426 (5th Cir.1982); Donovan v. Dillingham, 668 F.2d 1196 (11th Cir.1982); see also Tyler Business Services, Inc. v. NLRB, 695 F.2d 73 (4th Cir.1982); Photo Data, Inc. v. Sawyer, 533 F.Supp. 348 (D.D.C.1982). Finally, CLF urges with some force that its petition was at least in part and in substance a permit modification action, for which fees are allowed, and not a licensing proceeding, for which fees are not allowed under the EAJA.