UNITED STATES of America,
Plaintiff, Respondent,

v.

COMMONWEALTH OF PUERTO RICO
and Environmental Quality Board,
Defendants, Petitioners.

No. 83–1046.

United States Court of Appeals,
First Circuit.

Argued June 6, 1983.

Decided Oct. 11, 1983.

As Amended Dec. 7, 1983.

Marvin B. Durning, Seattle, Wash., with whom Lynn D. Weir, Seattle, Wash., Hector Reichard de Cardona, Secretary of Justice, Eduardo L. Buso, Dept. of Justice, San Juan, P.R., Gerardo A. Carlo, Carlo & Dubos, Old San Juan, P.R., and Durning, Webster & Lonnquist, Seattle, Wash., were on brief, for defendants, petitioners.

Francis X. Bellotti, Atty. Gen., Stephen M. Leonard, Asst. Atty. Gen., Boston, Mass., Joseph I. Lieberman, Atty. Gen., Richard F. Webb, Asst. Atty. Gen., Hartford, Conn., Jim Smith, Atty. Gen., Bruce D. Barkett, Asst. Atty. Gen., Tallahassee, Fla., Stephen H. Sachs, Atty. Gen., Baltimore, Md., Thomas A. Deming, Asst. Atty. Gen., Annapolis, Md., Rufus L. Edmisten, Atty. Gen., Daniel C. Oakley, Asst. Atty. Gen., Raleigh, N.C., Jim Mattox, Atty. Gen., Jim Mathews and Nancy N. Lynch, Asst. Attys. Gen., Austin, Tex., on brief for Com. of Mass., State of Conn., State of Fla., State of Md., State of N.C., and State of Tex., amici curiae.

Raymond W. Mushal, Atty., Environmental Enforcement Section, Land and Natural Resources Div., Dept. of Justice, Wash-

ington, D.C., with whom Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Raymond L. Acosta, U.S. Atty., Gary H. Montilla, Asst. U.S. Atty., Hato Rey, P.R., Richard M. Cornelius, Office of General Counsel, Dept. of the Navy, Craig T. Vanderhoef, Office of Navy Judge Advocate General's Corps, and Thomas P. Tielens, Office of Navy Judge Advocate General's Corps, Washington, D.C., were on brief, for appellee.

Before COFFIN and BREYER, Circuit Judges, and SELYA,* District Judge.

SELYA, District Judge.

The United States, on behalf of the Navy, instituted this action in the district court against the Commonwealth of Puerto Rico and its Environmental Quality Board ("EQB"), seeking to set aside a decision of the EQB denying a water quality certification request. The defendants (hereinafter collectively "Puerto Rico" or "the Commonwealth") moved to dismiss the case for want of subject matter jurisdiction, asseverating that the Clean Water Act of 1977, Pub.L. No. 95–217, 91 Stat. 1566 (1977) (codified as amended at 33 U.S.C. §§ 1251–1376) ("CWA") requires the issues raised in the complaint to be adjudicated in the courts of the Commonwealth. In a reported opinion, *United States v. Puerto Rico,* 551 F.Supp. 864 (D.P.R.1982), the court below denied the motion, but suggested certification of the issue presented as one justifying interlocutory appellate review. The parties concurred in this suggestion, and an appropriate order was entered below. We granted leave to appeal pursuant to 28 U.S.C. § 1292(b), and now affirm.

I.

The underlying facts giving rise to this action have been set forth in detail in our opinion in a predecessor case, *Romero-Barcelo v. Brown,* 643 F.2d 835 (1st Cir.1981), *rev'd in part sub nom. Weinberger v. Romero-Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), and it would be pleonas-

tic to repeat them here. A decurtate recital of certain crucial facts is, however, useful in setting the stage upon which the instant confrontation was played out in the district court.

Vieques Island lies off the southeast coast of Puerto Rico; over three-fourths of the island is owned by the United States Navy. The Navy uses both the island and its surrounding coastal waters to stage training exercises, some of which involve live ammunition weapons fire. Puerto Rico originally brought suit to enjoin the conduct of such activities. In so doing, the Commonwealth argued, *inter alia,* that the dropping of ordnance into coastal waters without a National Pollution Discharge Elimination System ("NPDES") permit violated the CWA. In *Romero-Barcelo,* the Supreme Court affirmed our ruling that the CWA was applicable to the ongoing naval operations and that a NPDES permit should have been sought (643 F.2d at 861–62), though the Court reversed our decision pertaining to the need for interim injunctive relief pending the obtaining of such a permit. *Weinberger v. Romero-Barcelo,* 456 U.S. at 320, 102 S.Ct. at 1807.

While *Romero-Barcelo* was pending, the Navy commenced efforts to comply administratively with the strictures of the CWA, and in the course thereof filed for a NPDES permit. After receipt of the application, the United States Environmental Protection Agency ("EPA") requested the EQB, pursuant to 33 U.S.C. § 1341, to issue a water quality certificate (such a certificate being a condition precedent to the EPA's issuance of a NPDES permit). 33 U.S.C. § 1341(a)(1). The EQB refused to act on this request since no environmental impact statement ("EIS") had been filed with respect to the off-shore bombing. A draft EIS was subsequently prepared and circulated by the Navy, and a final EIS was thereafter issued. EPA then renewed its bid for a water quality certificate. The EQB entertained this request, held the requisite public hearing, and eventually denied

* Of the District of Rhode Island, sitting by designation.

certification, citing divers grounds.[1] The Navy's petition for reconsideration was summarily denied by the EQB, and the instant action thereupon ensued.

## II.

Putting the novel issue presented for our consideration in proper perspective necessitates, at the outset, both an explication of the relevant statutory mosaic and perlustration of the proceedings below within that statutory frame of reference.

In order to protect and enhance the quality of the nation's water resources, Congress enacted the Federal Water Pollution Control Act Amendments of 1972, P.L. 92–500, 86 Stat. 816 (1972) ("FWPCA"). The FWPCA, erected on the foundation of the Federal Water Quality Act of 1965, Pub.L. No. 89–234, 79 Stat. 903 (1965), was a bold and sweeping legislative initiative. Experience with the FWPCA during its embryonic years led to substantial amendment, evidenced most notably by the enactment in 1977 of the CWA.[2] The linchpin of the Act is the NPDES permit process. Such a permit is required for the discharge of any pollutant into any body of water covered by the Act. 33 U.S.C. § 1342(a)(1). To secure a NPDES permit, an applicant must obtain a certificate from the appropriate state agency validating compliance with both federal and state water pollution control standards.[3] 33 U.S.C. § 1341(a)(1). Failure to procure such certification prevents the applicant from receiving its permit; and a state decision denying certification, or one imposing conditions or restrictions, is not reviewable administratively by the EPA. *Roosevelt Campobello International Park Commission v. United States Environmen-*

*tal Protection Agency,* 684 F.2d 1041, 1056 (1st Cir.1982) ("*RCIPC I*"). At least in the case of applications by non-federal agencies, such a decision is likewise exempt from review in federal court. *Id. See also Shell Oil Co. v. Train,* 585 F.2d 408, 414 (9th Cir.1978). The EQB is the Puerto Rican agency charged with certification responsibilities, and its decisions are, in the normal course, appealable to the Commonwealth's superior court. P.R. Laws Ann.Tit. 12, § 1134(d)(2).

Some four years after passage of the FWPCA, the Supreme Court, in *EPA v. California ex rel. State Water Resources Control Board,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976), ruled that federal facilities need not comply with state standards or pollution control requirements. *Id.* at 227–28, 96 S.Ct. at 2035; *cf. Hancock v. Train,* 426 U.S. 167, 198–99, 96 S.Ct. 2006, 2021–22, 48 L.Ed.2d 555 (1976) (rationale of *EPA v. California* applied to the Clean Air Act). Congress, plainly disenchanted with this pronouncement, the following year enacted 33 U.S.C. § 1323(a) as a part of the CWA. This provision provides in pertinent part:

Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be *subject to, and comply with, all Federal, State, interstate, and local requirements, administrative au-*

---

1. In substance, the EQB concluded that the discharges violated both the Puerto Rico Public Policy Environmental Act, P.R.Laws Ann.Tit. 12, § 1121 *et seq.* and the CWA; that no effective monitoring system could be devised to verify compliance with any restrictions set by the EQB; and that the evidence adduced was insufficient to establish a reasonable likelihood of compliance with Puerto Rico's Water Quality Standards. *See* Resolution and Notification of EQB (Dec. 2, 1981), at 16–17.

2. The FWPCA, as augmented and amended by the CWA, is sometimes referred to herein as "the Act".

3. A state has the authority to promulgate water pollution control standards which are stricter than those mandated by the federal government. *Commonwealth Edison v. Train,* 649 F.2d 481, 486 (7th Cir.1980); *see* 33 U.S.C. § 1370. Puerto Rico is considered as a "state" for purposes of the Act. 33 U.S.C. § 1362(3), and thereby enjoys the power to fix such standards.

*thority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges.* The preceding sentence shall apply (A) to any requirement whether substantive or procedural (*including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever*), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law. Nothing in this section shall be construed to prevent any department, agency, or instrumentality of the Federal Government, or any officer, agent, or employee thereof in the performance of his official duties, from removing to the appropriate Federal district court any proceeding to which the department, agency, or instrumentality or officer, agent, or employee thereof is subject pursuant to this section, and any such proceeding may be removed in accordance with section 1441 et seq. of Title 28.[4] (Emphasis added).

The net effect of this statute was to reverse legislatively the Court's ruling in *EPA v. California, supra,* and to require that federal facilities achieve certification pursuant to 33 U.S.C. § 1341(a)(1) in order to obtain NPDES permits.

Faced with an unmistakable declaration of congressional intent that federal facilities must comply with state water pollution control requirements, the government sought NPDES certification in the instant case. When the EQB balked at granting such a certificate, the United States, in lieu of appealing that denial to the Commonwealth courts, filed this action in the district court. In doing so, appellee relied on 28 U.S.C. § 1345, which provides in material part as follows:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

The Commonwealth moved to dismiss on the ground that the enactment of 33 U.S.C. § 1323(a) satisfied the exception in 28 U.S.C. § 1345, and thus mandated adjudication of the EQB denial in the Puerto Rico superior court. The district court, as previously noted, denied the motion. On appeal, the Commonwealth raises the same basic contention. In support of its position, Puerto Rico argues in substance that 33 U.S.C. § 1323(a) requires federal facilities to be treated no differently than non-federal facilities; and that, just as a private-sector proprietor cannot contest such an EQB decision in the district court, *RCIPC I,* 684 F.2d at 1056, so, too, the United States. In effect, the Commonwealth urges that what is sauce for the non-federal goose is likewise sauce for Uncle Sam's gander.

## III.

In order to sharpen the focus of the competing contentions raised by the parties, in a context where no provision of the Act explicitly provides for deflection of 28 U.S.C. § 1345 in CWA cases, it is useful to examine the circumstances under which § 1345 may be deemed to have been abridged by Congress. More particularly, since the heart of the Commonwealth's exhortation is that 33 U.S.C. § 1323(a) impliedly repeals 28 U.S.C. § 1345 by virtue of its command that all federal facilities must

---

**4.** 33 U.S.C. § 1323 also ceded to the President authority to grant exemptions for, *inter alia,* military operations. Despite the carving-out of this national security escape hatch, no such exemption has, for aught that appears of record here, ever been sought with reference to the Navy's training exercises at Vieques Island,

and none has been conferred. In the absence of executive action, national security considerations, heretofore sometimes relied on by us in matters related to the much-litigated terrain of Vieques Island, *see e.g., United States v. Zenon,* 711 F.2d 476, at 478–479 (1st Cir.1983), can play no role in our assessment of this appeal.

adhere to state procedural requirements (including, in appellants' view, state forum designations anent the appeal of EQB decisions), the parameters of the doctrine of implied repeal must be ascertained.

The Supreme Court has recently had occasion to reexamine this doctrine in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). There, the plaintiff alleged that his dismissal from employment violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). After unsuccessful pursuit of state employment discrimination claims, both administratively and in the state courts, the employee brought a Title VII action in the district court. Since the factual predicate of the suit was virtually identical to that upon which the state proceedings had been based, the claim was dismissed on the ground that the federal courts were constrained to give preclusive effect to state court adjudications pursuant to 28 U.S.C. § 1738.[5] On appeal, the employee expostulated that in enacting Title VII, Congress had, by implication, repealed 28 U.S.C. § 1738 as regards employment discrimination cases. In rejecting this argument, the Supreme Court first reiterated the long-settled notion that implied repeals are not lightly to be indulged. *Id.* at 468, 102 S.Ct. at 1890; *accord Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *United States v. Brien,* 617 F.2d 299, 310 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). The Court further held that statutes should be read consistently when possible, *Kremer v. Chemical Construction Corp.,* 456 U.S. at 468, 102 S.Ct. at 1890; *accord United States v. Brien,* 617 F.2d at 310, and proceeded to catalogue the two recognized categories of repeals by implication:

(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2)

if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest .... *Radzanower v. Touche Ross & Co., supra,* at 154 [96 S.Ct., at 1993], quoting *Posadas v. National City Bank,* 296 U.S. 497, 503 [56 S.Ct. 349, 352, 80 L.Ed. 351] (1936).

*Kremer v. Chemical Construction Corp.,* 456 U.S. at 468, 102 S.Ct. at 1890. Such an analysis is, of course, wholly appropriate in assaying any claim that the original jurisdiction of the district courts under 28 U.S.C. § 1345 has been truncated by illation, as the Court has acknowledged that such jurisdiction "should not be disturbed by a mere implication flowing from subsequent legislation." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 808, 96 S.Ct. 1236, 1242, 47 L.Ed.2d 483 (1976).

Applying these guidelines to the case at bar, our task is plain: we must analyze whether Congress intended 33 U.S.C. § 1323(a) to act as a substitute for the jurisdictional provisions of the Judiciary Code (especially 28 U.S.C. § 1345); or in the alternative, whether an unbridgeable schism exists between 33 U.S.C. § 1323(a) and 28 U.S.C. § 1345.

## IV.

The legislative history of the CWA, in and of itself, provides precious little insight into whether Congress intended the federal compliance provision to be a surrogate for 28 U.S.C. § 1345. The Senate Report, more concerned with the federal government's failure to serve as an exemplar for pollution control, simply stated:

[S]ection 313 [of the FWPCA] is amended to specify that, as in the case of air pollution, a Federal facility is subject to any Federal, State, and local requirement

---

**5.** 28 U.S.C. § 1738 provides in pertinent part: Such Acts, records and judicial proceeding or copies thereof, so authenticated, shall have the same full faith and credit in every court

within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

respecting the control or abatement of water pollution, both substantive and procedural, to the same extent as any person is subject to these requirements. This includes, but is not limited to, requirements to obtain operating and construction permits, reporting and monitoring requirements, any provisions for injunctive relief and such sanctions imposed by a court to enforce such relief, and the payment of reasonable service charges.

S.Rep. No. 95–370, 95th Cong., 1st Sess. 67, *reprinted in* 1977 U.S.Code Cong. & Ad. News 4326, 4392. ("Senate Report").

The Senate-House conference committee added the provision explicitly sanctioning the use of the general removal statutes, 28 U.S.C. §§ 1441–51, when a federal actor is sued in state court. In making this addition, the conference committee gave no articulated indication of its underlying rationale for so doing, remarking only that:

The conference substitute is essentially the same as the Senate amendment revised to conform with a comparable provision in the Clean Air Act and with the additional requirement that any action or other judicial proceeding to which this provision applies may be removed by the Federal department, agency, instrumentality, officer, agent, or employee to the appropriate district court of the United States.

H.Conf.Rep. No. 95–830, 95th Cong., 1st Sess. 93, *reprinted in* 1977 U.S.Code Cong. & Ad.News 4424, 4468.

It is in the dim light of this murky backdrop that we must proceed in our effort to divine the congressional will.[6]

Although the legislative history of the CWA is cryptic at best, that history (*see, e.g., id.*), as well as our recent decision in *Roosevelt Campobello International Park Commission v. EPA,* 711 F.2d 431 (1st Cir. 1983) ("*RCIPC II*"), suggests that we examine the comparable provision in the

Clean Air Act Amendments of 1977, P.L. No. 95–95, 91 Stat. 685 (1977) (codified as amended at 42 U.S.C. §§ 7401–642) ("CAA") and its antecedents.

Federal compliance under the CAA is dictated by 42 U.S.C. § 7418(a), which provides:

Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, and each officer, agent, or employee thereof, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law. No officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable.

This provision is substantially identical to 33 U.S.C. § 1323(a), with one glaring exception: the removal language is missing. While the legislative history of the CAA, like that of the CWA, does not address

---

**6.** In fact, given congressional concern over pollution by federal facilities, *see* Senate Report at 67–68, one could argue persuasively that Congress never considered the possibility that the United States might be a plaintiff in litigation under the state certification procedures. But,

even this avails the Commonwealth scant solace, as implied repeal requires the party urging that proposition to demonstrate a "clear and manifest" legislative intention to effect the repeal. *Kremer,* 456 U.S. at 468, 102 S.Ct. at 1890.

whether the provision requiring federal compliance is intended as a substitute for any provision of the Judiciary Code (much less 28 U.S.C. § 1345, the House report on the CAA does point out that the same federal compliance provision also amends the citizen suit provision of the CAA (now codified at 42 U.S.C. 7604(e)) to permit states to sue federal facilities in state courts. H.R. Rep. No. 294, 95th Cong., 1st Sess. 201, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1077, 1279–80.

Although we express no opinion as to whether removal might or might not be appropriate under the CAA, the records of the Congress are, to a point, instructive. While Congress has indicated some intention to detour around a federal forum in CAA certification cases (at least where the government is on the defense), no such road-map is to be found referable to the CWA. To the contrary, by the insertion of language which explicitly contemplates a federal forum in suits under the CWA—language which is wholly alien to the CAA as enacted—Congress seems knowingly to have chosen a different route. And, at a bare minimum, it can be said with considerable assurance that no clear or manifest legislative intent to work a substitution of 33 U.S.C. § 1323(a) for 28 U.S.C. § 1345 appears in the archives of Congress or in the interstices of the CWA.

## V.

In the absence of any such positive manifestation, we must, in adherence to the *Kremer* test, examine whether an irreconcilable conflict exists between 28 U.S.C. § 1345 and 33 U.S.C. § 1323(a). If so, the latter, having been enacted later in time, would perforce control.

The goal of 33 U.S.C. § 1323(a) is to insure that federal facilities comply fully with apposite state laws and regulations, Senate Report at 67, recognizing that the states are the prime bulwark in the effort to abate water pollution. 33 U.S.C. § 1251(b). But, is state court adjudication of the denial of NPDES certificates pursuant to 33 U.S.C. § 1341(a)(1) so critical to the teleology of federal compliance that the dictates of 28 U.S.C. § 1345 must necessarily be overridden? To this question, we must respond in the negative.

We observe, first, that laying the two statutes side by side fails to reveal any inherent contradictions. Compliance with state and local standards—"requirements, administrative authority, and process and sanctions", in the parlance of 33 U.S.C. § 1323(a)—can, it would seem, be enforced as well by the federal courts as by non-federal tribunals. And, sub-part (C) of § 1323(a) specifically contemplates, at least to some entropic extent, enforcement by the federal judiciary.

Moreover, since 33 U.S.C. § 1323(a) unequivocally grants to the United States the right to remove compliance proceedings brought against it to the district courts, Congress must not have believed that the perficient enforcement of state standards required, ipso facto, a non-federal forum. It would be anomalous indeed, given this scenario, were we to hold that a different rule should prevail for proceedings of a kindred nature initiated by the government. The result would be a patchwork: precertification compliance on the part of federal facilities being in thrall to the exclusive jurisdiction of the state courts, and postcertification enforcement relative to the same facilities remaining within the reach of federal jurisdiction.[7] Divvying up jurisdiction in such a mindless fashion, while admittedly reminiscent of the precedent proposed by Solomon to resolve conflicting claims of parentage, *see* 2 Kings, 3:16–28, should not gladly be suffered by the courts in the absence of a firm congressional directive to do so. *Cf. Franchise Tax Board v. Construction Laborers Vacation Trust,* —— U.S. ——, 103 S.Ct. 2841, 77 L.Ed.2d 420 (U.S.

---

**7.** Taking appellants' thesis, of course, this crazy-quilt pattern is susceptible to even more bizarre twists, because even certain pre-certification actions, e.g., suits to enforce the Act in the absence of, or for neglect to obtain, certification would, if prosecuted against the United States, be amenable to removal to the district court under 33 U.S.C. § 1323(a).

1983) (federal jurisdiction under ERISA limited to those situations in which it is necessary to effectuate the statute's purposes); *Levy v. Lewis,* 635 F.2d 960, 966–67 (2d Cir.1980) (special circumstances exist for federal courts to abstain from deciding breach of ERISA-qualified plans despite the grant of concurrent jurisdiction in federal and state courts for the adjudication of such claims). Here, the absence of expressed congressional resolve forms a matched pair with the lack of any compelling reason sufficient to justify the extraordinary result urged upon us by the Commonwealth.

In passing the CAA, Congress apparently acted upon the belief that state court adjudication of state law issues was of paramount importance in air pollution control matters; elsewise, Congress would not have consciously foreclosed, at least part-way, the availability of a federal forum.[8] By adopting a removal provision for the CWA, however, Congress signalled precisely the opposite intent. It must have assumed that the maintenance of litigation anent state water pollution laws in federal courts would not adversely affect federal compliance with such laws.[9] Implicit in this assumption is the recognition that, since state law governs controversies involving NPDES permits, *see, e.g., District of Columbia v. Schramm,* 631 F.2d 854, 863 (D.C.Cir.1980), the federal judicial system has the capacity to apply state law in enforcement proceedings. Certainly, assessment of whether or not the determination of an administrative agency is supported by substantial evidence (the criterion established for review of the instant EQB certification denial under P.R.

Laws Ann.Tit. 12, § 1134(g)) is not foreign to the wonted responsibilities of the district courts. *See, e.g.,* 5 U.S.C. § 706(2)(E). And, if the federal courts are capable of interpreting state law so as to effect compliance therewith when the United States is a defendant, we find no reason to doubt that the same ability inheres when the government is a plaintiff. Indeed, the Congress has historically seen fit to entrust state law questions to the tender ministrations of the federal judiciary in much broader contexts. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). It is true that we recently noted that the CWA and CAA are ordinarily to be read *in pari passu, RCIPC II,* 711 F.2d at 437, but this parallelism cannot be taken beyond the frontiers of logic. The case at bar furnishes an excellent example of such an outer limit, given the unique removal language embodied in the CWA and omitted from the CAA.

## VI.

In light of the above, there can be but a single meaningful solution to this jurisdictional tangram. As was true of the Supreme Court in *Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* "Our concern in this case is consistent application of a system of statutes conferring original federal court jurisdiction". —— U.S. at ——, 103 S.Ct. at 2856. Consentient with established principles of statutory construction and with prior case law, there is no legally sufficient basis to presume that 33 U.S.C. § 1323(a) was designed to preempt the provisions of the Judiciary Code or to supplant 28 U.S.C. § 1345 as to

---

**8.** Carrying the appellee's argument to its logical extreme, the government apparently maintains that, even as to the CAA, the absence of removal language such as graces the CWA does not suffice to oust the district courts from jurisdiction under 28 U.S.C. § 1442. While this proposition seems at first blush to teeter on shaky ground in the cold light of the legislative history and the commands of 42 U.S.C. § 7604(e), it is not squarely before us; and we leave it open for a later day.

**9.** It is not for us to gauge the wisdom of Congress' judgment on these issues; that is, after all, the prerogative of the electorate. *Munn v. Illinois,* 94 U.S. 113, 134, 24 L.Ed. 77 (1876). *See, e.g., Harris v. McRae,* 448 U.S. 297, 326, 100 S.Ct. 2671, 2693, 65 L.Ed.2d 784 (1980); *Maher v. Roe,* 432 U.S. 464, 479, 97 S.Ct. 2376, 2385, 53 L.Ed.2d 484 (1977); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

water pollution control matters. Further, Congress has made and adequately evinced its judgment that state court adjudication is not needed to promote federal compliance under the CWA; [10] accordingly, we can find no irreconcilable conflict between 33 U.S.C. § 1323(a) and 28 U.S.C. § 1345. Thus, we give effect to both by permitting the appellee to maintain the instant action in the district court. The district judge correctly denied the Commonwealth's motion to dismiss.

The case is remanded to the court below for further proceedings consistent with this opinion.

*Affirmed.*

---

**10.** Appellants raise implicitly (and the amici raise explicitly) the issue of abstention. The amici argue that, even if jurisdiction inheres in the district court in this instance, the federal judiciary should eschew such jurisdiction in order to allow the Puerto Rican courts the opportunity to rule on a thorny issue of state law. *Cf. Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28–29, 79 S.Ct. 1070, 1072–1073, 3 L.Ed.2d 1058 (1959). The amici also contend that the hand of the district court should be stayed so as not to disrupt the Commonwealth's endeavors to establish a coherent policy anent water pollution control. *Cf. Alabama Pub. Serv. Comm. v. Southern R. Co.,* 341 U.S. 341, 349–50, 71 S.Ct. 762, 768–69, 95 L.Ed. 1002 (1951).

To be sure, the issue presented in this case is of vital significance to the Commonwealth. But, the state policies at issue do not serve a sufficiently important countervailing interest to justify abstention by the federal courts. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 813–16, 96 S.Ct. at 1244–45. At bottom, this case does not involve far-reaching and presently unresolved principles of Puerto Rican law; rather, it calls for a routine determination as to whether or not an administrative body's finding is supported by substantial evidence. The novel and compelling issue presented is one of federal law and federal jurisdiction. This juxtaposition is a far cry from the conundrum limned in *Thibodaux, supra,* regarding the extent of a city's power to condemn the property of a utility; nor does the case at bar implicate matters of strictly local concern. Unlike the availability of intrastate rail service at issue in *Alabama Pub. Serv. Comm., supra,* the goals and methods for controlling water pollution are, in large part, dictated by the federal government. *See, e.g.,* 33 U.S.C. §§ 1251, 1342, 1370.

It would be anomalous indeed to require the federal courts to abstain from any role in the initial certification process, and yet remain duty-bound to rule on enforcement actions citing the federal government's putative non-compliance with Puerto Rican water pollution control standards. The policies and interests of the Commonwealth are implicated equally at either stage; and, if abstention is interdicted by congressional directive at the latter stage, we find no logic to support a judge-made inhibition at the earlier stage.