**STATE OF FLORIDA DEPARTMENT OF ENVIRONMENTAL REGULATION, Plaintiff,**

v.

**SILVEX CORPORATION, a Florida corporation; Christine L. Ellis; Kimberly Ann Benner; Julia Lynn Nicely; Dexter Benner; Pepper Industries, a California corporation; and the United States Navy, Defendants.**

No. 83–926–Civ–J–14.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 28, 1985.

Thomas K. Maurer, Richard P. Lee, Asst. Gen. Counsel, Tallahassee, Fla., for plaintiff.

Dorothea Beane, Jacksonville, Fla., F. Henry Habicht, II, & John L. Wittenborn, Wadhington, D.C., for Navy.

George D. Gabel, Jr., Mitchel E. Woodlief, Jacksonville, Fla., for Pepper.

James A. Blesoe, Jr., Harold S. Lippes, Jacksonville, Fla., for Silvex, et al.

## ORDER GRANTING MOTION TO DISMISS

SUSAN H. BLACK, District Judge.

This case is before the Court on defendant United States Navy's (hereinafter "Navy") Motion to Dismiss and memorandum in support. The plaintiff State of Florida Department of Environmental Regulation (hereinafter "DER") filed a memorandum in opposition to which the Navy replied.[1]

---

1. The history of this action since the filing of Navy's reply memorandum deserves brief review. On March 6, 1984, the defendants Silvex Corporation (hereinafter "Silvex"), Christine L. Ellis, Kimberly Ann Benner, Julia Lynn Nicely, and Dexter Benner moved to consolidate this case with Case No. 82–1020–Civ–J–16 (hereinafter "Case No. 82–1020"), then before the Hon-

The Navy moves to dismiss the action against it on grounds that there has been no waiver of sovereign immunity authorizing the Court to entertain this suit by a state agency against a federal entity. The Court, having reviewed the file in this action, particularly the extensive memoranda of the parties, agrees with the Navy's position.

The plaintiff's claim against the Navy is based on the allegedly negligent release of hazardous waste materials. The Navy's co-defendant, Pepper Industries, Inc. (hereinafter "Pepper") was responsible for removing waste materials generated by the Navy at its naval air station in Jacksonville, Florida. The waste was transported to Silvex's facilities where it was stored and then incinerated. In December, 1981, the contents of a 25,000 gallon storage tank owned by Pepper were released onto the ground at the Silvex site.

The plaintiff seeks to hold the Navy liable for damages and injunctive relief under Fla.Stat. §§ 403.727(4), and 403.726.[2] Section 403.727(4) holds strictly liable for removal costs and resource damage those, among others, who owned or possessed the released hazardous waste. Section 403.726 empowers the DER to take emergency action when the spillage of hazardous waste materials poses an imminent hazard to the public health, safety and welfare.

 Before the Court can determine liability under the above-referenced state statutes, it must first find that the federal government has consented to be sued. *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 2965 & n. 9, 77 L.Ed.2d 580 (1983); *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70; 85 L.Ed. 1058 (1941). Consent to suit cannot be implied, but must be unequivocally expressed. *Block v. North Dakota ex rel. Board of University and School Lands*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). The government's consent, when given, must be strictly construed and may not be modified by implication. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Soriano v. United States*, 352 U.S. 270, 273–276, 77 S.Ct. 269, 271–273, 1 L.Ed.2d 306 (1957). Like any legal entity, states are barred under the doctrine of federal sovereign immunity from suing the federal government except upon express waiver. *Block v. North Dakota*, 461 U.S. at 280, 103 S.Ct. at 1816.

The DER contends that the federal government has waived its sovereign immunity in an action involving hazardous waste, pursuant to 42 U.S.C. § 6961 of the Resource Conservation and Recovery Act (hereinafter "RCRA"). That section of the RCRA states in part that:

Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over

---

orable John H. Moore, II. Judge Moore, having the lower-numbered case, ruled on the motion. Although Judge Moore found that the issues in his case and the case now before this Court arose from the same factual situation, he denied the motion to consolidate so that Case No. 82–1020 could proceed to trial without delay. As trial was set to commence with the trial term of June 18, 1984, and because the trial could resolve issues involved in the Motion to Dismiss, this Court on May 18, 1984, notified the parties that it would defer ruling on the pending motion until judgment was entered in Case No. 82–1020. On July 6, 1984, the parties in Case No. 82–1020 filed their Stipulation of Dismissal and notified this Court that any unresolved claims would be brought into Case No. 83–926 via a motion to amend. Subsequently, on August 1, 1984, the defendants Silvex, Christine L. Ellis, Kimberly Ann Benner, Julia Lynn Nicely, and Dexter Benner moved this Court for leave to file cross-claims against co-defendants, Navy and Pepper Industries, Inc. in this case. These claims were those remaining from Case No. 82–1020 which were not resolved pursuant to the stipulated dismissal. The defendant Pepper Industries, Inc. filed an objection to the motion to file cross-claims on August 10, 1984.

**2.** It is unclear on the face of the Complaint which statutes the Navy is alleged to have violated. Pursuant to the Court's order for clarification, the DER has stated that it "seeks to assert only the claim brought pursuant to Section 403.-727(4), Florida Statutes appearing in Count V and the claim brought pursuant to Section 403.-726, Florida Statutes, appearing in Count VI. . . ." Response to Order dated January 7, 1985.

any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to and comply with all Federal, State, interstate, and local requirements both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief.

The Navy responds that this waiver is expressly limited to subjecting federal agencies to liability for a failure to comply with the substantive and procedural *requirements* of the State of Florida. The Navy contends the provisions of the state statutes on which the DER bases its claims

against the Navy are not "requirements" as envisioned by Congress.

To ascertain what Congress meant by "requirements" and whether these state statutes set requirements for which a federal entity could be liable, the Court will conduct a two-part examination. First, the Court will briefly explore the legislative history of the RCRA and similar waiver provisions to determine Congress' intended definition of the term. Secondly, the case law interpreting requirements will be examined. This language of the RCRA has not been the subject of judicial interpretation, therefore the Court will examine the approach of courts which have interpreted requirements as that term is used in the waiver provisions of analogous federal environmental control legislation.[3]

A legislative report discussing the pre-RCRA bill then before the Senate indicates the RCRA was intended to force federal agencies dealing with hazardous waste "*to comply with State and local controls* on solid waste and hazardous waste disposal as if they were private citizens." This includes compliance with all substantive and procedural requirements, *and specifically any requirements to obtain permits.*" Senate Report No. 94–988, 70th Cong., 2nd Session, at 24 (1976); 122 Cong.

---

3. A comparison of the waiver provisions appearing in federal environmental control legislation demonstrates their similarity; though, both the Clean Air Act and the FWPA have broader waiver language than section 6961. These provisions have been amended since the legislative history noted in the case law, however there is "no evidence that the amendments were intended to expand the category of applicable substantive requirements" beyond those recognized and noted further in this opinion. *Romero-Barcelo v. Brown,* 643 F.2d 835, 854 n. 36 (1st Cir.1981), *rev'd on other grounds, sub nom. Weinberger v. Romero Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

The waiver provisions of both the Clean Air Act and the FWPA provide in part as follows: Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge [or runoff] of *air* pollutants, and each officer, agent, or employee thereof, shall be subject to, and

comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of *air* [water] pollution in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply (a) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement whatsoever), (B) to the exercise of any Federal, State or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law. No officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable. 42 U.S.C. § 7418 and 33 U.S.C. § 1323. (Portions bracketed are peculiar to the FWPA and portions underlined are peculiar to the Clean Air Act).

Rec. 32,631 (Sept. 27, 1976). The requirements referred to in the Senate report are more in the nature of regulatory guidelines and ascertainable standards that a federal agency dealing with hazardous waste would have to meet.

Senate Report No. 94–988 further states that section 6961 parallels the waiver provisions of the Clean Air Act, 42 U.S.C. § 7418, and the Federal Water Pollution Control Act, 33 U.S.C. § 1323. *See supra* footnote 3. The legislative history of these provisions demonstrates a similar intent to have requirements defined as objective state standards of control. *See, e.g., Hancock v. Train*, 426 U.S. 167, 188–189 & n. 2, 96 S.Ct. 2006, 2017 & n. 2, 48 L.Ed.2d 555 (1976) (legislative history of Clean Air Act discloses that various preliminary drafts and committee reports used requirements interchangeably with "emission requirements" and "emission standards"). *EPA v. California ex rel. State Water Resources Board*, 426 U.S. 200, 215 & n. 28, 96 S.Ct. 2022, 2029 & n. 28, 48 L.Ed.2d 578 (1976) (legislative history of the FWPA indicates requirements refers to "effluent limitations" and similar "control requirements").

The courts interpreting requirements as used in federal environmental legislation have also limited the term to a state's regulatory requirements. Courts reviewing the waiver provisions of the Clean Air Act, the FWPA, and the Noise Control Act, 42 U.S.C. § 4903(b), the language of which, as noted above, directly parallels section 6961, consistently have held that requirements is a limited term which cannot be expanded to include the kinds of state law liability provisions that the DER relies on in this case. *See, e.g., United States v. Commonwealth of Puerto Rico*, 721 F.2d 832 (1st Cir.1983); *Romero-Barcelo v. Brown*, 643 F.2d 835 (1st Cir.1981), *reversed on other grounds, sub nom. Weinberger v. Romero-Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *EPA v. California State Water Resources Control Board*, 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976); *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976).

■ Although these cases typically have focused on whether requirements include a need for federal agencies to obtain state permits, they demonstrate the narrow reading given the federal waiver provisions by the judiciary. These courts initially recognize the limited nature of the waiver of federal sovereignty in the case of environmental control. States are entrusted with the "primary responsibility" of assuring the quality of the environment. *Train v. Natural Resources Defense Council*, 421 U.S. 60, 64, 95 S.Ct. 1470, 1474, 43 L.Ed.2d 731 (1975). To achieve uniformity and consistency in state environmental regulation, sovereign immunity is partially waived to require federal entities to comply with state standards. This narrow intrusion into federal sovereign immunity has required that courts strictly define requirements as objective and ascertainable state regulations; e.g., state pollution standards or limitations, compliance schedules, emission standards, and control requirements. *See, e.g., United States ex rel. Tennessee Valley Authority v. Tennessee Water Quality Control Board*, 717 F.2d 992, 997 (6th Cir.1983); *EPA v. California*, 426 U.S. at 215 & n. 28, 96 S.Ct. at 2029 & n. 28; *Hancock*, 426 U.S. at 186, 96 S.Ct. at 2016. Consistent with this case law, the Fifth Circuit recently interpreted "requirements" as used in the Noise Control Act to mean those "relatively precise standards capable of uniform application ...." *Romero-Barcelo v. Brown*, 643 F.2d at 855. In light of these cases, the Court finds the provision of the Florida statutes herein fail to set forth the specific, precise standards which the term requirements encompasses.

In sum, the legislative history and the case law interpreting federal statutes with similar waiver language have strictly defined requirements as synonymous with state objective regulations. The DER does not seek to hold the Navy liable for a failure to comply with state requirements. Although certain of the statutes apply liability to those failing to meet regulatory requirements, the statutes themselves are

not requirements and no failure on the part of the Navy to meet the requirements referred to is anywhere alleged. The DER has merely alleged an act of spillage and stated that the Navy is liable under various Florida statutes. The Court finds after reviewing the provisions of the state statutes that the DER has failed to demonstrate that 42 U.S.C. § 6961 clearly and unambiguously permits the Navy to be subjected to liability under these state statutes. Commenting on similar waiver language appearing in the Clean Air Act and whether that language included permit requirements, the Supreme Court stated:

> In view of the undoubted congressional awareness of the requirement of clear language to bind the United States, our conclusion with respect to subjecting federal installations to state permit requirements, the Clean Air Act does not satisfy the traditional requirement that such intention be evinced with satisfactory clarity. Should this nevertheless be the desire of Congress, it need only amend the Act to make its intention manifest.

*Hancock*, 426 U.S. at 198, 96 S.Ct. at 2021 (footnotes omitted).[4] The waiver of immunity as to these Florida statutes is ambiguous at best, therefore, the Navy will be dismissed as a party defendant to this action. Pursuant to this dismissal, the Court will by separate order entered on this date remand this case to state court.

Upon consideration, it is

ORDERED that the defendant United States Navy's Motion to Dismiss is granted, and the Court will enter a judgment dismissing the United States Navy.

---

4. The waiver language in both the Clean Air Act and the FWPA were subsequently amended to include permit requirements by making those provisions applicable to procedural as well as substantive requirements. Romero-Barcelo v.

Brown, 643 F.2d at 859 n. 36; *see also* United States ex rel. Tennessee Valley Authority v. Tennessee Water Quality Board, 717 F.2d 992, 997 (6th Cir.1983).