# United States Court of Appeals
## For the First Circuit

---

No. 04-1753

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

LAHEY CLINIC HOSPITAL, INC.,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Lynch, Lipez, Howard, Circuit Judges.

---

Richard P. Ward, with whom Ropes & Gray LLP was on brief, for appellant.

Jeffrey Clair, Attorney, Civil Division, United States Justice Department, with whom Peter D. Keisler, Assistant Attorney General, Michael J. Sullivan, United States Attorney, Douglas N. Letter, and Nancy Rue, Attorneys, Civil Division, United States Justice Department, were on brief, for appellee.

---

February 4, 2005

---

**LYNCH**, **Circuit Judge**.  The United States filed a civil complaint in federal district court under 42 U.S.C. § 1345 alleging that the Lahey Clinic Hospital billed Medicare and received payment for tests and other diagnostic procedures performed by its clinical laboratory when Lahey knew, or reasonably should have known, that the tests were not reasonable and necessary for diagnosis or treatment of illness or injury of Medicare beneficiaries.  The United States sought restitution for these overpayments, including an accounting, disgorgement of improper gains of over $311,000, and prejudgment interest, under common law theories of unjust enrichment and payment under mistake of fact.

Lahey moved for judgment on the pleadings and, in the alternative, for summary judgment.  Lahey argued that the Medicare Act, 42 U.S.C. § 1395, et seq., and the attendant administrative procedures promulgated by the Secretary of Health and Human Services (HHS), are the exclusive avenue for recovery by the United States of Medicare overpayments, and as such, the district court had no subject matter jurisdiction.  The court denied the motion and certified the question of subject matter jurisdiction to this court under 28 U.S.C. § 1292(b).

On interlocutory appeal, the question presented is whether the district court lacks subject matter jurisdiction because the Medicare Act explicitly or implicitly repeals the grant of federal court jurisdiction under 28 U.S.C. § 1345 or displaces

the underlying common law causes of action over which § 1345 gives federal courts jurisdiction.  We hold that the Medicare Act does not repeal 28 U.S.C. § 1345 or displace the underlying common law causes of action.  We affirm.

I.

Congress established the Medicare program in 1965 by Title XVIII of the Social Security Act. 42 U.S.C. § 1395 et seq. Medicare is a federally subsidized health insurance program for the elderly and certain disabled individuals.  See id. § 1395c.  The Secretary of HHS is responsible for the Medicare program, and during the time period relevant to this case, the Health Care Financing Administration (HCFA)[1] was the component of HHS responsible for administering the Medicare program.

Medicare is divided into two parts: Part A and Part B. Part A provides insurance for covered inpatient hospital and related post-hospital services.  Part B provides voluntary and supplementary insurance which covers physicians' and certain other medical and health services, including laboratory tests administered by a hospital and furnished to outpatients for the purpose of diagnosis.  Id. §§ 1395j, 1395k, 1395x(s).  The Secretary contracts with "fiscal intermediaries" (FIs) and "carriers" to make initial reimbursement determinations and to

---

[1]The Health Care Financing Administration is now referred to as the Center for Medicare and Medicaid Services.

administer payments.  These entities are often private insurance companies.  In most circumstances, FIs administer Part A and carriers administer Part B, but FIs administer the program with respect to hospitals for outpatient services covered under Part B.

The claims here concern payments for services provided under Part B of Medicare.  During the relevant time period involved in this case, these payment decisions were made "by the Secretary in accordance with the regulations prescribed by him."  Id. § 1395ff(a).  In order to be reimbursed through Medicare Part B, participating providers must first file a claim with their FI.  As for the services involved in this case, they must be reasonable and necessary for diagnosis or treatment of illness or injury; they were covered only if ordered by a treating physician who used the test results in the management of the beneficiary's specific medical problem.  42 C.F.R. § 410.32.  Once a payment decision has been made, a dissatisfied provider may seek administrative review of this determination and then judicial review of the Secretary's final decision after the avenues of administrative appeal have been exhausted.  Id. § 1395ff(b)(1).

In the late 1980's, Medicare's escalating payments for laboratory services became a source of increasing concern to Congress, the Secretary, and HHS's Office of Inspector General.  In legislation that took effect in 1986, Congress imposed payment caps on the amount individual carriers could pay in reimbursement for

laboratory services.  See 42 U.S.C. 1395l(h).  Nonetheless, payments for Part B laboratory services continued to rise, reaching $3.9 billion in fiscal year 1987.

In response to these rising costs, in 1990, the HHS Inspector General (IG) conducted a review of a sample of Medicare billings for the year 1988 and determined that Medicare was paying nearly twice as much as physicians for the same tests.  The IG found that much of the added cost was attributable to Medicare's reimbursement of panels of tests.  These tests were bundled together and performed at the same time, as an integrated group. The IG found that when physicians ordered these panels of tests, they were billed at a reduced rate to account for savings from performing the tests as a group.  However, when Medicare was billed for these tests, the individual tests within the panel were billed separately at their full rate, resulting in greatly increased costs to Medicare.

A 1998 audit by the IG found the same problem in claims for clinical tests performed by hospital laboratories serving outpatients.  The 1998 audit also raised concerns about certain hematology indices, which can be generated from the results of other tests.  The report concluded that in many instances these indices were automatically prepared when other related tests were ordered and then separately billed to Medicare, even if the index was duplicative or medically unnecessary.

Within the narrow category of services of clinical laboratory tests performed by hospital outpatient laboratories, including chemistry, hematology, and urinalysis tests, the IG found that "Medicare FIs overpaid hospital outpatient department laboratories about $43.6 million . . . during a two year period from January 1, 1994 to December 31, 1995." The IG found for that same time period "an additional $15.6 million could have been saved if policies had been developed to preclude payment for additional automated hematology indices."

Accordingly, the IG recommended that the Secretary implement controls to stop these overpayments and seek to recover overpayments previously made. The Secretary agreed and noted that he would "coordinate any recovery activity with the Department of Justice through our Office of General Counsel." A number of civil actions have been instituted to recover some of these costs under various theories. See, e.g., United States v. Blue Cross & Blue Shield of Ala., 156 F.3d 1098 (11th Cir. 1998) (False Claims Act); United States v. Tenet Healthcare Corp., 343 F. Supp. 2d 922 (C.D. Cal. 2004) (common law mistake and negligent misrepresentation). The current dispute between Lahey and the United States arose against this background.

We are careful to say that Lahey does not argue that the United States may not recover overpayments, only that it has chosen

the wrong approach in doing so.[2]  Similarly, the United States has

not alleged fraud on Lahey's part in this action.  Lahey is a

renowned academic medical center that participates in the Medicare

program as a "provider of services" to Medicare beneficiaries.

Lahey has entered into a provider agreement with the Secretary

pursuant to 42 U.S.C. § 1395cc.  The agreement provides that Lahey

will be reimbursed by Medicare through Blue Cross/Blue Shield of

Massachusetts (Lahey's FI during the relevant time period) for

medical services that are "reasonable and necessary for the

diagnosis or treatment of illness or injury or to improve the

functioning of a malformed body member."  42 U.S.C. §

1395y(a)(1)(A).

On January 30, 2003, the United States filed an action

under 28 U.S.C. § 1345[3] against Lahey alleging "violations of the

common law giving rise to causes of action for unjust enrichment

---

[2]Lahey does assert in its statement of facts and in its reply brief that the Medicare statute limits the Secretary's authority to seek restitution of overpayments more than three years after determination of the initial claim.  Lahey relies on 42 U.S.C. § 1395gg(b) for the proposition that no collection may be had from a provider who is "without fault," and that the statute presumes that a provider is without fault if the reimbursement determination is more than three years' old.  The United States disputes this assertion and offers a different interpretation of the statute. The United States argues that the statute's three-year presumption of "without fault" is limited by the language, "in the absence of evidence to the contrary."  Id.  This claim does not go to the subject matter jurisdiction of the district court, and therefore we do not address it.

[3]28 U.S.C. § 1345 grants broad jurisdictional power to the district courts over suits when the United States is plaintiff.

and payment under mistake of fact." The allegations were split into two different groups. The first group asserted that Lahey "repeatedly billed Medicare for separate individual laboratory tests that could practically and more economically be performed as a single panel of tests." This billing practice violated Medicare reimbursement policies which required the tests to be billed as "an integrated, single panel of tests rather than separately." The government also alleged that Lahey knew or should have known of this reimbursement requirement and that Lahey nonetheless submitted numerous individual claims between July 1, 1993 and June 30, 1994. In total, the United States stated that Lahey submitted over 9,300 Medicare claims for unbundled blood chemistry tests.

A second group of allegations asserted that virtually every time a complete blood count test was ordered for a patient and Lahey billed the United States for this test, Lahey performed a medically unnecessary hematology test. Specifically, between July 1, 1993 and December 31, 1996, Lahey submitted over 88,000 claims for payment of certain "automated hemogram indices," which were generated every time a complete blood count was ordered. The United States alleges that Lahey repeatedly billed Medicare for these tests without making any determination that they were medically necessary or actually sought by the treating physician and that in fact these tests were rarely medically useful.

Lahey moved for judgment on the pleadings or in the

alternative, summary judgment, primarily arguing that the district court did not have subject matter jurisdiction because Medicare's jurisdictional provisions, specifically 42 U.S.C. §§ 405(h) and 405(g), bar the United States from seeking to recover a prior overpayment through a direct action in federal court. Lahey asserted that the initial decision by the FI to reimburse Lahey for the tests is a final decision of the Secretary, and this final decision can only be reopened by the Secretary through the processes and procedures outlined in the Medicare Act and the regulations promulgated pursuant to it.

Finding that it had subject matter jurisdiction, the district court denied Lahey's motion on March 25, 2004. The court held that the statutory provisions in the Medicare Act apply to claims brought against the United States not claims brought by the United States as plaintiff. The district court based its decision on several factors: the language of the statutory provisions; the decision in United States v. Aquavella, 615 F.2d 12, 21 (2d. Cir. 1979), which concluded that "§ 405(h) by its terms applies only to actions brought against the government and not by the government"; and that the policy reasons for requiring administrative review are not implicated when the government is the plaintiff.

Lahey requested that the district court certify its order for interlocutory appellate review. On April 30, 2004, the district court amended its prior order and certified the issue for

interlocutory appeal under 28 U.S.C. § 1292(b), stating that the denial of summary judgment involved "a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation."[4]  Lahey then petitioned this court for permission to take an interlocutory appeal, and framed the question presented as whether "Lahey Clinic Hospital, Inc. [is] entitled to dismissal pursuant to Fed. R. Civ. P., Rule 12(b)(1) because the Court lacks subject matter jurisdiction."  This court granted permission to appeal on June 9, 2004, and we have jurisdiction pursuant to 28 U.S.C. § 1292(b).

## II.

Lahey's opening brief to us argues that the district court lacks subject matter jurisdiction because:

> By virtue of the incorporation of §§ 405(g) and 405(h) into the Medicare Act, federal district courts only have subject matter jurisdiction to review Medicare payment decisions that have initially been presented to and determined by the Secretary and any such determinations have been fully reviewed under the Secretary's regulations establishing administrative review procedures.  Only after

---

[4]Indeed there is a conflict of views within the district of Massachusetts. Compare United States v. Univ. of Mass. Mem'l Med. Ctr., 296 F. Supp. 2d. 20 (D.Mass. 2003) (finding that § 405(h) barred an exercise of subject matter jurisdiction and dismissing the action), with United States v. Lahey Clinic Hosp., No. 03-10194-RWZ (D. Mass. April 30, 2004) (finding that § 405(h) did not apply when the action was brought by the United States).  Our opinion today overrules the reasoning in Univ. of Mass. Mem'l Med. Ctr., supra.

> the Secretary has made a "final decision" after affording the provider of services an administrative evidentiary hearing to determine the many factual issues that bear on whether under applicable Medicare principles there were any overpayments for which the provider is liable, does a federal court have jurisdiction to review a decision of the Secretary.

These preliminary procedures did not take place, and therefore, Lahey argues, the district court does not have subject matter jurisdiction.

Lahey also argues that the district court lacks subject matter jurisdiction for a number of other reasons: (1) the judicially established doctrines of exclusive or primary jurisdiction; (2) the lack of justiciability under the doctrines of ripeness and exhaustion of administrative remedies; (3) exercising jurisdiction in this case would deprive Lahey of procedural due process mandated by the Medicare Act;[5] and (4) the United States failed to meet its burden of proof to present sufficient facts to establish subject matter jurisdiction.[6]

---

[5]This argument does not implicate the district court's subject matter jurisdiction under 12(b)(1) and is beyond the scope of this interlocutory appeal.

[6]"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." 5B Charles Alan Wright & Arthur B. Miller, Federal Practice and Procedure § 1350, at 61 (3d ed. 2004). While this challenge is usually employed in the instance in which the moving party believes there is no federal question jurisdiction under 28 U.S.C. § 1331 or diversity of citizenship jurisdiction under 28 U.S.C. § 1332, "the scope of Rule 12(b)(1) is flexible," and it can serve as "a

Lahey's order of argument is misplaced.  Each of its arguments assumes the premises that the Medicare Act is the only avenue available to the United States to recover Medicare overpayments and that the Act repeals the grant of federal court jurisdiction under § 1345 and displaces the underlying common law causes of action.  We first address whether those premises are correct.

Subject matter jurisdiction in this case is barred by the Medicare Act only if Congress in enacting the Medicare Act has removed federal court jurisdiction over these claims brought by the United States as plaintiff under 28 U.S.C. § 1345.  A related issue is whether the Medicare Act displaced the underlying common law causes of action relied on by the government in this case to exercise its right to recover payments wrongfully made out of the public fisc.  Congress undoubtedly has the ability to do both of

procedural vehicle" for raising a variety of challenges to the court's power to hear the case.  Id. at 100-02.  Failure to exhaust administrative remedies and ripeness challenges may be appropriate in a motion to dismiss for lack of subject matter jurisdiction.  See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275 (1st Cir. 1999); Deniz v. Municipality of Guaynabo, 285 F.3d 142 (1st Cir. 2002).  In addition, jurisdictional facts might be relevant for determining whether the district court has subject matter jurisdiction in a Rule 12(b)(1) motion when there is a dispute over those facts.  See Skwira v. United States, 344 F.3d 64 (1st Cir. 2003) (discussing the different standard of review of the district court's findings as to jurisdictional facts and the district court's ultimate conclusion of subject matter jurisdiction, which is a question of law subject to de novo review).  There are, however, no relevant jurisdictional facts in dispute here as the issue is one of law.

-12-

these actions. See Colorado River Water Conservation Dist. v.

United States, 424 U.S. 800 (1976); City of Milwaukee v. Illinois,

451 U.S. 304 (1981).

But if Congress has not acted in this manner, then

Lahey's argument, concerning the need for a final overpayment

decision that was initially presented to and determined by the

Secretary and was fully reviewed under the Secretary's

administrative regulations prior to the exercise of federal court

jurisdiction, is irrelevant.[7] The federal court has an independent

jurisdictional grant under § 1345 and the United States has an

independent cause of action for recovery under the common law.

We now turn to those two critical issues and treat them

as corollary. Both are pure questions of law, and our review is de

---

[7]Lahey argues that the Supreme Court reasoned in Weinberger
v. Salfi, 422 U.S. 749, 766 (1975), that the federal courts do not
have jurisdiction over claims involving Medicare overpayment
decisions, until the two jurisdictional prerequisites of § 405(h)
-- initial presentment to the Secretary and administrative
exhaustion through the agency's administrative review and hearing
procedures -- are satisfied. We disagree with Lahey's reading of
Salfi as it relates to this case for two reasons. First, Salfi
involved a constitutional challenge by a class of individuals who
brought an action against the Secretary seeking to recover Social
Security benefits. Id. at 755. Second, the United States does
not rely on the Medicare Act as the source of its cause of action
or the jurisdictional basis of its claim. It relies on 28 U.S.C.
§ 1345 for jurisdiction and common law remedies to recover payments
erroneously made out of the public fisc. Salfi is factually
distinct, and the Salfi Court did not engage in an analysis of
implied repeal of § 1345 or the displacement of the federal common
law claims.

-13-

novo.  P.R. Tel. Co. v. Telecomm. Regulatory Bd. of P.R., 189 F.3d 1, 7 (1st Cir. 1999).

28 U.S.C. § 1345 grants broad jurisdictional power to the district courts over suits when the United States is plaintiff. The statute provides:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits, or proceedings commenced by the United States or by an agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345.[8]

Section 1345 creates subject matter jurisdiction, and the statute can only be limited, as the initial proviso provides, by (1) an explicit repeal of the statute by an Act of Congress or (2) an implicit repeal by total irreconcilability of the two acts. See Colorado River, 424 U.S. at 808.  Repeal of a federal statute by implication is disfavored, and the individual arguing for repeal has the burden of showing that the statute has been repealed. Cf. King v. Collagen Corp., 983 F.2d 1130 (1st Cir. 1993) (burden on the individual arguing for preemption of state law to show that the law is preempted).  The intention of Congress to repeal must be clear and manifest. Radzanower v. Touche Ross & Co., 426 U.S. 148,

---

[8]Lahey's argument appears to assume that if the federal courts lack jurisdiction, the United States could not bring a common law action in state courts.  That might be a possible conclusion out of Lahey's second argument (displacement of the common law causes of action), but surely not as to the first (repeal of § 1345).

-14-

154 (1976). There is a strong presumption against implied repeals of federal statutes, see Kremer v. Chemical Constr. Corp., 456 U.S. 461, 468 (1982); United States v. Commonwealth of Puerto Rico, 721 F.2d 832, 836 (1st Cir. 1983), and this presumption is perhaps an even stronger one when the repeal is a grant of jurisdiction to the federal courts. Where, in particular, the subject matter jurisdiction of the federal courts is involved, jurisdiction "should not be disturbed by mere implication from the subsequent legislation." Colorado River, 424 U.S. at 808 (quoting Rosecrans v. United States, 165 U.S. 257, 262 (1897)).

To show an explicit repeal of a grant of federal court jurisdiction under § 1345, Lahey must point to a later enacted statute which by its terms explicitly repeals this jurisdiction.

Second, if Congress has not explicitly repealed § 1345, then Lahey must point to total irreconcilability with a later statute or, perhaps, that the later act was meant as a substitute by covering the whole subject matter.[9]

_____

[9]It is unclear whether implied repeal of a jurisdictional statute, such as § 1345, can be effectuated by the second test articulated in Kremer. Kremer did not deal with a grant of federal court jurisdiction. This court has adopted the reasoning of Kremer as it applies to the implied repeal of § 1345. See United States v. Commonwealth of Puerto Rico, 721 F.2d 832 (1st Cir. 1983). However, there the court limited its repeal analysis to whether § 1345 was irreconcilable with the subsequent statute and determined that it was not. Congress could easily wish to change a substantive rule without depriving the federal courts of jurisdiction.

The second test articulated in Kremer is relevant when dealing with the implied repeal of a rule of law apart from the

-15-

Kremer, a case not involving the repeal of a grant of federal court jurisdiction, sets forth a two-part test for implied repeals of federal statutes:

> (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest. . . .

Kremer, 456 U.S. at 468 (citing Radzanower v. Touche Ross & Co., 426 U.S. at 154 (quoting Posadas v. Nat'l City Bank, 296 U.S. 497, 503 (1936))). We assume in Lahey's favor that both prongs of the Kremer test are available for all aspects of its claims. In shorthand terms, to show an implicit repeal of § 1345, Lahey must show that (1) the provisions of § 1345 are in irreconcilable conflict with the Medicare Act or (2) the Medicare Act, by clear and manifest intent, covers the whole subject matter area and was meant as a substitute.

---

jurisdiction of the court. However, Colorado River may limit the implied repeal of jurisdictional statutes only to situations where jurisdiction of the federal courts under § 1345 is irreconcilable with the subsequent statute. See Colorado River, 424 U.S. at 808 ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.") (quoting Morton v. Mancari, 417 U.S. 535, 550 (1974)).

-16-

As for Lahey's second claim that a federal statute displaces the federal common law, "the relevant inquiry is whether the statute [speaks] <u>directly</u> to [the] question otherwise answered by the common law."  See <u>County of Oneida, New York</u> v. <u>Oneida Indian Nation</u>, 470 U.S. 226, 237 (1985) (quoting <u>City of Milwaukee</u>, 451 U.S. at 315) (internal quotation marks omitted).  Although the Court recognized that Congress need not "affirmatively proscribe" the common law doctrine at issue, <u>see</u> <u>United States</u> v. <u>Texas</u>, 507 U.S. 529, 534 (1993) (quoting <u>City of Milwaukee</u>, 451 U.S. at 315), still "[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles . . . ."  <u>Id.</u> (quoting <u>Isbrandtsen Co.</u> v. <u>Johnson</u>, 343 U.S. 779, 783 (1952)).

To show displacement of the common law causes of action relied on by the United States to recover money wrongfully paid by the Treasury, Lahey must overcome this presumption and demonstrate that Congress has directly addressed the issue and that Congress intended to preclude the United States from assertion of common law rights to recover overpayments by enactment of the Medicare Act.

Inconsistency between the two statutes (or claimed inconsistency of a statute with common law) is not enough: "where two seemingly inconsistent acts can reasonably stand together, a court must interpret them in a manner which gives harmonious operation and effect to both, in the absence of clear and

-17-

unambiguous expression of Congressional intent to the contrary." United States v. Kenaan, 557 F.2d 912, 917 (1st Cir. 1977) (citing Morton v. Mancari, 417 U.S. 535, 549-51 (1973)).

A.  Explicit Repeal of Section 1345

Lahey asserts that jurisdiction under § 1345 is expressly limited by the introductory proviso that states: "Except as otherwise provided by Act of Congress . . . ."  28 U.S.C. § 1345. Lahey argues that §§ 405(g) and 405(h), of the Medicare Act, 42 U.S.C. § 1395ff(b) and 42 U.S.C. § 1395ii respectively, repeal the jurisdictional grant of § 1345 as they are "Act[s] of Congress" that come within this limiting proviso.

Section 405(g) provides for judicial review in the federal courts of the Secretary's final administrative decision by an individual.  The relevant part of § 405(g) states as follows:

(g) Judicial Review

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

-18-

42 U.S.C. § 405(g).[10]

Lahey argues that § 405(h), in turn, makes § 405(g) the exclusive avenue for judicial review of the Secretary's final determinations. Section 405(h) provides:

> (h) Finality of Commissioner's decision
>
> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Id. § 405(h).

Specifically, Lahey points to the second sentence in § 405(h) -- "[n]o findings of fact or decision of the [Secretary of HHS] shall be reviewed by any person, tribunal, or governmental agency except as herein provided" -- and argues the language manifests an express congressional intent to repeal § 1345 in decisions regarding the payment or overpayment of Medicare claims. Lahey contends that the initial payment decision to reimburse Lahey

---

[10]The text of 405(g) and 405(h) refers to the "Commissioner of Social Security" rather than the Secretary. The statutory provisions applying § 405(h) to Medicare, however, make clear that references to the Commissioner should be deemed to be references to the "Secretary" where the context indicates. See 42 U.S.C. § 1395ii.

for the tests is "a decision of the Secretary" and § 405(h) makes § 405(g) the <u>exclusive</u> avenue for judicial review of this decision, regardless of whether the plaintiff is the United States or a dissatisfied beneficiary or provider.[11]

The argument fails. By its terms, neither the sentence Lahey cites nor § 405(h) as a whole mention § 1345. Also, they do not apply where, as here, the Secretary has made neither findings of fact nor a decision after a hearing. The United States is not asking the federal courts to review a decision of the Secretary, it is bringing an independent action to establish the United States' right to obtain restitution of monies wrongfully paid from the public fisc.

Indeed, by its terms, § 405(h) is more consistent with congressional intent to preserve jurisdiction under § 1345. The third sentence of § 405(h) is explicit that no action "<u>against</u> the

---

[11]Lahey's brief also directs the court's attention to the Federal Claims Collection Act, 31 U.S.C. § 3711(a)(1). In this statute, Congress mandated that heads of agencies attempt to recover overpayments. The statute provides in pertinent part:

> § 3711. Collection and compromise
>     (a) The head of an executive, judicial, or legislative agency - -
>     (1) shall try to collect a claim of the United States Government for money or property arising out of the activities of, or referred to, the agency . . . .

31 U.S.C. § 3711(a)(1). Quite correctly Lahey does not suggest that this statute somehow expresses a congressional intent to preclude the United States from pursuing overpayment actions under § 1345 or displaces the federal common law remedies available to the United States.

-20-

United States . . . shall be brought under § 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h) (emphasis added). Section 405(h) does not refer to actions brought by the United States or actions brought under 28 U.S.C. § 1345. And § 405(g), the terms of which Lahey argues are the exclusive route to judicial review, refers to "individuals," not to the "United States."

Lahey's argument is also inconsistent with Colorado River, which involved the question of whether the same statute here at issue, 28 U.S.C. § 1345, had been repealed by the McCarran Amendment. Colorado River, 424 U.S. at 807-09. The Court noted that the McCarran Amendment did contain some limitations but, as here, did not mention § 1345. The court concluded that the statute by its terms did not "indicate any repeal of jurisdiction under § 1345." Id. at 807.

A reading of the text of the statute alone may not be dispositive of the explicit repeal question. When determining the intent of Congress, Colorado River at least encourages[12] a further

---

[12]Subsequent case law suggests that resort to legislative history is more appropriate in the implied repeal analysis. See Kremer, 456 U.S. 461 (examining legislative history to determine whether a previous statute had been implicitly repealed by a subsequent statute); Commonwealth of Puerto Rico, 721 F.2d 832 (examining legislative history to determine whether Congress impliedly repealed § 1345); Kenaan, 557 F.2d at 916. Regardless of under which prong of the repeal analysis legislative history is considered, the legislative history relevant to Lahey's claims does not advance Lahey's argument that § 1345 was repealed by the Medicare Act.

examination of the legislative history of the Medicare Act to see if it evidences "a clear purpose to terminate any portion of § 1345 jurisdiction." Id.; see also Commonwealth of Puerto Rico, 721 F.2d at 836. The United States argues that "the fundamental purpose of Medicare's jurisdictional scheme is to channel all claims pressed by dissatisfied providers or beneficiaries through a detailed process of administrative review before such claims are presented in federal court." See Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 13 (2000) (The Medicare scheme requires the "channeling" of "virtually all legal attacks" on the Secretary's decisions and determinations through the agency.).

Lahey has provided no legislative history in support of its argument that Congress intended to repeal jurisdiction under § 1345. Nor has it refuted the government's assertions as to the purpose of the review provisions. The burden is on Lahey, and it does not meet its burden. Our own review shows the legislative history supports the government's position. The 1965 Amendments to the Social Security Act established the Medicare program and the appeals process for payment determinations. Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 286 (1965). Senate Report 89-404 accompanies this law. S. Rep. No. 89-404. The Senate Report is void of any expression by Congress of intent to repeal federal court jurisdiction under § 1345. Instead, the report focuses on the need for the appeals process in order for the

_individual_ to challenge the determinations of the Secretary.  Id. at 58.

## B. Implied Repeal of § 1345 and Displacement of Common Law

Even if Lahey cannot prevail on the express repeal prong, a second avenue of argument is available:  that Congress impliedly repealed § 1345 jurisdiction.  Lahey also argues that Congress displaced the underlying common law causes of action as to claims by the United States for recovery of Medicare overpayments.

We understand Lahey to argue as follows:  Congress authorized the Secretary of HHS to recover Medicare overpayments and to promulgate regulations to this end.  Those regulations provide detailed procedures under which providers can challenge decisions made by the Secretary.  The law is clear that a provider must make an initial presentation to the agency, which then must make a final determination, before there is any federal court review.  The law is also clear that once this initial payment decision is final, in order to reopen it, the Secretary must follow established procedures.  As a result, the administrative claims procedure is in irreconcilable conflict with § 1345 and it speaks directly to and hence displaces the United States' independent action for restitution.  According to Lahey, under the provisions of the Medicare Act, only the _Secretary_, in accordance with established procedures, may collect overpayments because only the Secretary can make and reopen final payment determinations, not the

-23-

Department of Justice.  In other words, the detailed remedies for recoupment established under the statute are exclusive and cannot be bypassed by the Department of Justice.

Lahey argues that "under the Medicare Act and its supplementary regulations, Congress has provided for very specialized remedies relating to and dealing with the recoupment of any overpayment."  Lahey's argument of implied repeal of § 1345 and displacement of common law rests entirely, not on the Medicare Act itself, but on a supposed conflict between suit to recover overpayment under § 1345 and an administrative remedial scheme for collection of overpayments, see 42 C.F.R. §§ 405.370, 405.371, 405.372, promulgated by the Secretary to carry out the purposes of 31 U.S.C. § 3711 and 42 U.S.C. § 1395g.  The argument is based on a fundamental misunderstanding.

Congress could, perhaps (we need not decide), attempt to expressly provide for repeal of a statute or displacement of the common law through delegation of such power to an agency.  But Congress has not done so here.  In the absence of such a delegation, a statute, § 1345, cannot be repealed by administrative regulation from an executive branch agency.  First, § 1345 by its terms states, "except as otherwise provided by Act of Congress"; it does not state "except as provided by administrative regulation of an agency."  In addition, the tests for implied repeal established through the case law involve congressional intent, not the intent

-24-

of an agency's regulations, regardless of how extensive they are. As for displacement of common law, the tests concern whether Congress directly spoke to the issue and whether Congress intended to deprive the government of a longstanding power. Thirdly, to permit an agency by its actions to repeal an act of Congress or displace a long standing power of the United States would pose grave constitutional questions of violation of separation of powers. Cf. Clinton v. New York, 524 U.S. 417 (1998).

There is nothing in the Medicare Act which establishes that the administrative remedy chosen by the Secretary here to collect overpayments and the limited judicial review provided for in §§ 405(b) and 405(h) are mandated by Congress as the exclusive remedy or that Congress delegated any such a choice to the Secretary.[13]

---

[13]As to reimbursement determinations made after October 1, 2002, an amendment, which was enacted in October 2000 and is not relevant to the claims at issue in this case, provides:

(G) Reopening and Revision of Determinations.
The Secretary may reopen or revise any initial determination or reconsidered determination described in this subsection under guidelines established by the Secretary in regulations.

42 U.S.C. § 1395ff(b)(1)(G). It expresses no intent by Congress to displace the federal common law or repeal federal jurisdiction under § 1345, by making this the exclusive avenue for reopening or revisiting initial payment determinations. Indeed the language of the statute itself suggests that the Secretary is not required to reopen or revise initial determinations. Surely Congress would not limit the ability to the government to bring an action outside of the administrative scheme yet not require the Secretary to collect overpayments.

As to the implied repeal of § 1345, we reject Lahey's argument that an irreconcilable conflict arises from the fact that in §§ 405(h), 405(g), and 42 U.S.C. § 1395oo[14] Congress deprives the federal courts of jurisdiction except on review of final decisions after an administrative hearing, and then only on a substantial evidence basis. Again, Lahey's argument is misplaced; these statutes do not purport to limit the government's ability to bring a claim against Medicare providers under a different grant of jurisdiction. "The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others." Verizon Md., Inc. v. Pub. Serv. Comm. of Md., 535 U.S. 635, 644 (2000). In Verizon, the Court concluded that the Congress did not strip the general grant of federal question jurisdiction in 28 U.S.C. § 1331 when it provided for federal review of state commission determinations under a specific provision of the Telecommunications Act. See id. Similarly, the fact that Congress has provided a limited avenue for judicial review in some circumstances does not support an implication that other avenues of judicial review are precluded.[15]

---

[14]Section 1395oo creates the Provider Reimbursement Review Board which is charged with holding hearings and rendering decisions in disputes over Part A payments. The claims in this case involve payments under Part B of Medicare. Additionally, § 1395oo by its terms provides for administrative and judicial review of claims filed by providers.

[15]In addition, Lahey reads the judicial review provisions of the Medicare Act out of context. Section 1395ff(b), during the

Before addressing Lahey's contention that the Medicare Act displaces the United States' common law causes of action, we add a few words about special problems raised by the claim. First, it does not go to subject matter jurisdiction at all. The Supreme Court has stated that "[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Verizon, 535 U.S. at 642-43 (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89 (1998)).

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. Rather, the district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining

time relevant to this appeal, provided that "[a]ny individual dissatisfied with any determination under subsection (a) of this section as to . . . the amount of benefits . . . shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in § 405(b) of this title and to judicial review of the Secretary's final decisions after such hearing as is provided in § 405(g) of this title." After the individual or provider has exhausted the administrative provisions laid out in § 405(b), the individual is then allowed to seek judicial review under § 405(g). The United States' ability to bring claims against the providers is not implicated at all in the provisions relating to how to challenge the FI's payment decisions. It is this administrative mechanism, as it relates to claims by providers, that § 405(h) makes the exclusive avenue of judicial review.

> jurisdiction or where such a claim is wholly
> insubstantial and frivolous.

Steel Co., 523 U.S. at 89 (internal quotations and citations omitted). There is no allegation that the United States' claim is "wholly insubstantial and frivolous."

Regardless, Lahey's argument, even if viewed as an argument for failure to state a claim, is simply wrong: the Medicare Act does not displace the common law remedies asserted by the United States. Lahey relies on City of Milwaukee for the proposition that "when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." City of Milwaukee, 451 U.S. at 314. Lahey contends that the Medicare Act is a "comprehensive scheme" enacted by Congress that "directly addresses" the United States' remedy for collecting overpayments, and therefore the need for the common law remedy "disappears."

The Court in a subsequent decision, United States v. Texas, recognized that although Congress need not "affirmatively proscribe" the common law doctrine at issue, 507 U.S. at 534 (quoting City of Milwaukee, 451 U.S. at 315), nonetheless "[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles . . . ." Id. (quoting Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783 (1952)).

-28-

This presumption may be even stronger when a longstanding power of the United States is involved.  In the context of recovery of overpayments, the government has broad power to recover monies wrongly paid from the Treasury, even absent any express statutory authorization to sue.  See United States v. Wurts, 303 U.S. 414 (1938).  "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid.  'No statute is necessary to authorize the United States to sue in such a case.  The right to sue is independent of statute . . . .'"  Id. at 415 (quoting United States v. Bank of Metropolis, 15 Pet. 377, 401 (1841)).[16]

Congress, of course, by statute can curtail the government's right to sue; however, "courts may take it as a given that Congress has legislated with an expectation that the [common law] principle will apply except 'when a statutory purpose to the

_____

[16]United States v. Wurts and the cases it relies on do not refer to the government's power to collect money wrongfully paid as a construction of the common law.  See 303 U.S. 414 (1938).  Indeed, the power of the United States to recover sums illegally or erroneously paid has been described by one court as part of the United States' "inherent authority."  Aetna Cas. & Sur. Co. v. United States, 526 F.2d 1127, 1130 (Ct. Claims 1975).  The Court of Claims suggested that an erroneously or illegally made payment is tied to a direct violation of the United States Constitution, Article IV, section 3, clause 2, id., which lodges with the Congress the power to "release or otherwise dispose of the rights and property of the United States."  See Royal Indemnity Co. v. United States, 313 U.S. 289, 294 (1941).  The causes of action asserted here for exercising this right are common law causes of action, but the right itself seems to be something more intimately tied with the power of the United States.

contrary is evident.'" <u>Texas</u>, 507 U.S. at 534 (quoting <u>Astoria Fed. Sav. & Loan Ass'n.</u> v. <u>Solimino</u>, 501 U.S. 104, 108 (1991)). Statutes are presumed not to divest the United States of pre-existing rights, such as the ability to collect wrongfully paid monies, absent a clear congressional command. <u>See</u> <u>United States</u> v. <u>United Mine Workers of America</u>, 330 U.S. 258, 272 (1947)("There is an old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect.").

Although provisions of the Medicare Act expressly authorize the Secretary to reopen initial payment determinations and to recoup overpayments administratively in certain circumstances, <u>see</u> 42 U.S.C. § 1395g(a) and 1395gg, the statute does not displace the United States' long standing power to collect monies wrongfully paid through an action independent of the administrative scheme,[17] nor is there any inconsistency. To the extent that a congressional purpose and intent to collect money wrongfully paid by the Medicare program is expressed through the

---

[17]The fact that the Medicare Act will be relevant to the common law action does not mean it displaces suit by the United States. In order to prove the allegations in the complaint, that indeed the payments were wrongfully made, the United States will have to refer to Medicare manuals, regulations, and other materials that relate to the appropriateness of the previous payments. However they in no way displace or limit the underlying ability to bring the independent claim for recovery. "Congress's obvious desire to enhance the common law in specific, well-defined situations does not signal its desire to extinguish the common law in other situations." <u>Texas</u>, 507 U.S. at 535 n.4.

Medicare statutes allowing the Secretary to collect these overpayments, allowing the United States to pursue collection independently is fully consistent with this purpose.

Indeed, the Secretary's very choice of how to proceed illustrates that the administrative remedies are not exclusive when the United States institutes suit. First, the Secretary chose to allow for only particular remedies in the administrative scheme, an indication that the administrative scheme is not exclusive of other remedies elsewhere. Second, the plaintiff in this case is "the United States of America, acting through the Department of Health and Human Services," which reflects the Secretary's position that the common law remedy and federal court jurisdiction under § 1345 are also available. Third, if the administrative remedy were exclusive, that would, in some situations, hinder or preclude the United States from recovering overpayment.

The Secretary has chosen the administrative remedies of suspension, recoupment, and offset (also called a setoff). See 42 C.F.R. §§ 405.370, 405.371. These are terms of art; "the pertinent distinction between a setoff and a recoupment is whether the debt owed the creditor . . . arose out of the 'same transaction' as the debt the creditor owes the debtor." See In re Holyoke Nursing Home, Inc., 372 F.3d 1, 3 (1st Cir. 2004). The Secretary's regulations specifically define the types of remedies available to the Secretary for recovering overpayments administratively. An

"Offset" is defined as "[t]he recovery by Medicare of a non-Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370. The regulation defines a "Recoupment" as "[t]he recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." Id. Finally, a "Suspension of payment" is defined as "[t]he withholding of payment by an intermediary or carrier from a provider or supplier of an approved Medicare payment amount before a determination of the amount of the overpayment exists." Id.

Each of these remedies of recoupment, offset, and suspension assume an ongoing relationship between the Secretary and the provider. In situations in which there is no ongoing Medicare relationship between the Secretary and the provider, such as where the provider has ceased to treat Medicare beneficiaries or has gone out of business, neither recoupment nor offset would provide the United States with an opportunity to recover the overpaid Medicare payments. In addition, in situations in which the government seeks damages in the form of a complete payment from the provider for the Medicare overpayments, the recoupment, suspension, and offset procedures do not provide for this relief.

Were more needed, we would say other parts of the federal statutory scheme also refute Lahey's "repeal" and "displacement"

arguments and demonstrate that the administrative scheme is not exclusive. In fact, Congress in other statutes has provided for the collection of overpayments independent of the scheme set up by the Medicare Act and the Secretary of HHS. In addition to the common law remedies available to the United States under § 1345, Congress has provided the government two other independent methods to recover overpayments. Under 42 U.S.C. § 1320a-7a(a)(1)(A), the Secretary may seek civil money penalties for knowing violations of the Medicare Act. Further, and wholly independent of the Secretary, the Attorney General may seek to recover Medicare payments made on the basis of a false or fraudulent claim. 31 U.S.C. §§ 3729-3733. The existence of these other statutes expresses a clear congressional intent to provide several avenues for the United States to recover monies owed to it and not to limit the means of recovery to those promulgated by the Secretary in the Medicare Act.

To its credit, Lahey correctly concedes that if the statute sued on were the False Claims Act, 31 U.S.C. § 3729-3733, rather than § 1345, the district court would have subject matter jurisdiction, admitting that the Medicare scheme does not impliedly repeal the False Claims Act. The difference, Lahey argues, is that § 1345 simply provides jurisdiction for common law actions, while the False Claims Act embodies a congressionally created cause of action. It is hard for us to fathom why Congress would intend to

give the government access to a judicial forum by statute when the overpayment was procured by fraud but to preclude the government from a routine common law damages action for overpayment.[18]

Finally, where two different statutory schemes give concurrent jurisdiction to courts "[t]here is no irreconcilability in the existence of concurrent state and federal jurisdiction." Colorado River Water Conservation District, 424 U.S. at 809.  That being so, it is hard to understand why concurrent jurisdiction in a court and the discretionary decision by an agency to create a partially overlapping administrative forum would lead to implied repeal of the court's statutory jurisdiction or displacement of the United States' common law remedies.

C.  Primary Jurisdiction

Lahey makes a final plea for deference to the Secretary's

---

[18]Lahey also argues that there is a meaningful difference for these purposes between actions for fraud and actions for recovery which do not assert fraud, as under § 1345.  Lahey argues the court is particularly well equipped to handle cases involving fraud as opposed to cases involving unjust enrichment and payment under mistake of fact, which implicate the expertise of the agency.  We do not see a meaningful distinction: a False Claims Act action would involve the same interpretation of Medicare codes as an overpayment action with the largest difference being that the government under the False Claims Act must also show fraudulent intent.

administrative expertise[19] by arguing that there should be a primary jurisdiction referral.  The primary jurisdiction referral request, denied by the district court, invokes prudential doctrines, and "does not implicate the subject matter jurisdiction of the federal court."  See P.R. Mar. Shipping Auth. v. Fed. Mar. Comm'n, 75 F.3d 63, 67 (1st Cir. 1996).  It is not within the scope of the certified question to us.  Even if we arguably had some form of supplemental appellate jurisdiction to reach the question, we see no basis on which to upset the district court's order.

### III.

Conclusion

We **affirm** the judgment of the district court.  Costs are awarded to the United States.

---

[19]Lahey also asserts a parade of horribles argument:  that the case is too complex to be tried in federal court, that the problems of proof of overpayment of numerous claims are insurmountable, and that the case would take twenty years to try.  One response is that these cases are less complicated to try than fraud cases, which Lahey concedes are permissible.  Further, sampling of similar claims and extrapolation from the sample is a recognized method of proof.  Chaves County Home Health Serv., Inc. v. Sullivan, 931 F.2d 914, 919 (D.C. Cir. 1991); Ratasen v. Cal. Dept. of Health Servs., 11 F.3d 1467, 1471 (9th Cir. 1993).  There is no reason to doubt the competence of courts; both civil and criminal cases for abuse of the Medicare system by providers are sadly common.  See, e.g., United States v. McGovern, 329 F.3d 247 (1st Cir. 2003).